No. 13,750.

## BOULDEN ET AL. *v.* McINTIRE.

MARRIAGE.— *Validity of.—Living First Husband.—Divorce will be Presumed.*
—In favor of the validity of a second marriage contracted by a woman while her first husband is alive, it will be presumed that the first marriage was legally dissolved by a divorce before the second was entered into, and one who asserts the invalidity of the later marriage must show that there had been no divorce.

SAME.— *Evidence.—Proof of Negative.—Burden.—*Where a negative is essential to the existence of a right, the party claiming the right has the

burden of proving such negative; hence where one bases his claim to land upon the alleged invalidity of a marriage, he must, by proper proof, remove every presumption in favor of the legality of the marriage, although to do this he must prove a negative.

SAME.—*Conveyance.*—*Quieting Title.*—*Evidence.*—Where a widow has conveyed land acquired by virtue of a second marriage contracted by her, and her grantee sues to quiet title as against relatives of the husband who assert the invalidity of the marriage, a transcript showing that the grantor's first husband obtained a divorce from her in the courts of another State after the execution of the conveyance, does not, if admissible in evidence at all, overcome the presumption that the wife had prior to her second marriage obtained a divorce.

MITCHELL, J., dissents.

From the Clinton Circuit Court.

*J. V. Kent, J. W. Merritt, M. Bristow, M. B. Beard* and *A. H. Boulden,* for appellants.

*J. Claybaugh, T. H. Palmer* and *W. F. Palmer,* for appellee.

COFFEY, J.—This was an action in the Clinton Circuit Court, brought by the appellee against the appellants to quiet title to the land described in the complaint. The cause was put at issue by the general denial, and a trial by a jury resulted in a verdict for the appellee. A decree was rendered by the court upon said verdict quieting the title of the appellee to the land in dispute.

The appellants assign as error the ruling of the circuit court in overruling their motion for a new trial. The reasons assigned for a new trial were:

1st. That the verdict of the jury is contrary to law.

2d. That the verdict of the jury is contrary to the evidence.

3d. That the verdict of the jury is not supported by sufficient evidence.

It appears from the evidence in the cause, that Horace G. Boulden died, intestate, the owner in fee of the land in dispute, leaving no children, or descendants of children, but leaving a mother, and brothers and sisters. The said Hor-

ace G. Boulden was married to Eliza Street, in Clinton county,. Indiana, on the 22d day of April, 1879, and he died in 1881,. leaving her surviving him. Subsequent to his death she conveyed the land in dispute to Samuel Traver, who conveyed to the appellee in this cause. The appellants are the mother, and brothers and sisters of Horace G. Boulden, and resist the claim of the appellee to this land upon the ground that said Horace was not legally married to said Eliza, she at the time of said pretended marriage having a living husband. There is no conflict in the evidence relating to the marriage of Eliza Street prior to her marriage with Horace G. Boulden. It is shown by the evidence, beyond question, that she was married to Charles Limes, in Fayette county, in the State of Ohio, in the year 1873, and that the said Limes is still living. Indeed, the deposition of Charles Limes is on file in this cause, in which he testifies to the marriage.

It is contended, however, by the appellee, that inasmuch as the presumption of law is against crime, we must presume that Eliza Limes was divorced from her husband, in the absence of some showing to the contrary, and that it was not enough for the appellants to show that she had a living husband at the time of her marriage with Horace G. Boulden, but they must go a step further and show that she had not been divorced.

In the case of *Yates* v. *Houston,* 3 Texas, 433, the parties appeared in Texas, as husband and wife, four years after the husband's separation from a former wife. The court held that "The rational presumption, after this lapse of time is, that the former wife was dead. * * The ordinary presumption in favor of the continuance of human life should not, under the facts of the case, outweigh the presumption in favor of the innocence of their cohabitation, and that there was no legal impediment to their marriage."

In the case of *Hull* v. *Rawls,* 27 Miss. 471, Mrs. Rawls. filed her petition for dower, which was resisted by Hull, the administrator of James C. Rawls, deceased, on the ground

that she was not the wife of Rawls, as he had a wife living at the time of his pretended marriage with the petitioner. The proof of the petitioner consisted of the record of her marriage, made in the clerk's office of Kemper county, in that State, showing the marriage was solemnized December 6th, 1848. On the part of the administrator it was proved that in 1844 James C. Rawls was living in Chickasaw county with a woman whom he treated as his wife, and that the parties were recognized as husband and wife in the community, and that Rawls had said at one time, in the presence of petitioner, that his former wife was then living in Georgia. The court said: "Aside from the statement of Rawls, there is nothing in the testimony which raises a suspicion against the validity of the marriage. The fact that the deceased was living in 1844 with a woman, believed to be his wife, is no evidence that she was living on the 6th of December, 1848. The marriage having been solemnized according to the forms of law, every presumption must be indulged in favor of its validity. * * If the former wife had been living in Georgia, as stated by Rawls, she would not necessarily be his wife in a legal sense, for they may have been legally divorced."

In the case of *Dixon* v. *People,* 18 Mich. 84, the defendant was indicted for murder, and the prosecution sought to use Harriet Dixon, who claimed to be his wife, as a witness, and to show that she was not his wife, and, therefore, competent to testify, proved to the court that she was married in 1859 to one Phillips, in Livingston county, in that State. The wife was then called, and admitted her marriage to Phillips, but further stated that the last time she saw Phillips was in April, 1860, and had not heard of him since; that in 1862 she saw an account in the newspapers of the death of a man by the name of Phillips, who she supposed to be her husband; that she, believing him to be dead, married the defendant in March, 1865. Under this evidence she was

VOL. 119.—37

allowed to testify, and the defendant excepted.   Upon the point we are now considering the court says: " This evidence made a very clear and strong *prima facie* case of a valid marriage in good faith with the defendant; since, without reference to the newspaper report, the presumption of innocence—that she would not commit the crime of bigamy by marrying the defendant while Phillips was alive—rendered it obligatory upon the court, in the absence of testimony to the contrary, conclusively to presume the death of Phillips and the validity of the marriage with the defendant."

In the case of *Harris* v. *Harris*, 8 Bradwell (Ill.), 57, Harris sought to obtain a divorce from his wife on the ground that she had another husband living at the date of their marriage.   The court, in discussing the question now under consideration, said : " When it is shown that a marriage has been consummated in accordance with the forms of the law, it is to be presumed that no legal impediments existed to their entering into matrimonial relations, and the fact, if shown, that either or both of the parties have been previously married, and, of course, at a former time having a wife or husband living, does not destroy the *prima facie* legality of the last marriage.   The natural inference in such case is, that the former marriage has been legally dissolved, and the burden of showing that it has not been, rests upon the party seeking to impeach the last marriage.   The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved either by the death of their former consort or by decree of the court, in order to protect themselves against a bill for divorce or a prosecution for bigamy."

In the case of *Greensborough* v. *Underhill*, 12 Vt. 604, the court says: " Is the intermarriage of Burdick with the pauper, in 1836, rendered illegal and void from the fact of her intermarriage with. Hyland in 1834, who, after a short cohabitation with her, absconded and has not since been heard of?   To render the second marriage illegal and void,

we must presume the continuance of the life of Hyland down to the time of the second marriage; and though, as a general principle, we are to presume the continuance of life for the space of seven years, still, when this presumption is brought into conflict with other presumptions in law, it may be made to yield to them. We are in all cases to presume against the commission of crime, and in favor of innocence; and the result will be, if we suffer this presumption to yield to the other, we, by presumption alone, pronounce the second marriage illegal and void, and the parties guilty of a heinous crime. * * In the case of *Rex* v. *Twining*, 2 B. & A. 386, the woman married again within the space of twelve months, after her husband had left the country; and yet the presumption of innocence was held to preponderate over the usual presumption of the continuance of life, and this, too, in a case involving a question of settlement."

In the case of *Teter* v. *Teter*, 101 Ind. 129, William H. Clayton, at the time he was formally married to Mrs. Hannah A. Teter, had a wife living in the State of Ohio. At a time subsequent to this marriage, Mrs. Clayton, the first wife, obtained a divorce in Greene county, this State. Clayton and his second wife lived together as husband and wife after the granting of the divorce, and it was held that the law presumed a good common law marriage after such divorce was granted. ELLIOTT, J., who delivered the opinion in that case, said: "The presumption in favor of matrimony is one of the strongest known to the law. * * 'The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy.'"

In the case of *Squires* v. *State*, 46 Ind. 459, the defendant was prosecuted for bigamy. The only evidence tending to prove that the first wife was alive at the time of the second marriage was that she was living in Buffalo, New York, two years previous to the second marriage. The defendant was convicted. It was held by this court that this

was no proof that she was living at the date of the second marriage, and the cause was reversed.

The presumption of the death of the former husband or wife, in the case of second marriage, is only one of the many presumptions the law indulges in favor of the validity of the second marriage. As the authorities cited abundantly establish, *every* presumption is to be indulged as against the illegality of such a marriage. If the law will presume the termination of the former marriage relation by the death of one of the parties to it, why not indulge any other presumption which might legally terminate that relation? We think, where the facts are not such as to destroy such a presumption, that a dissolution of the first marriage, by divorce, will be presumed in favor of the validity of the second marriage.

In the case of *Klein* v. *Laudman*, 29 Mo. 259, the plaintiffs brought suit for slander. They proved their marriage, but the defendant proved declarations of the wife that she had married, in Germany, to another man. The court says, in that case: "There was no presumption that a marriage, which was proved to have existed at one time in Germany, continued to exist here after positive proof of a second marriage *de facto* here. The presumption of law is, that the conduct of parties is in conformity to law, until the contrary is shown. That a fact, continuous in its nature, will be presumed to continue after its existence is once shown, is a presumption which ought not to be allowed to overthrow another presumption, of equal if not greater force, in favor of innocence. * * There was not any evidence that the first husband of Mrs. Klein was still living; but if this had been established, we think she was still entitled to the benefit of the favorable presumption that the first marriage had been dissolved by a divorce."

Mr. Bishop, in his valuable work on marriage and divorce, vol. 1, section 457, uses this language: "Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and.

whatever the form of the proofs, the law raises a strong presumption of its legality ; not only casting the burden of the proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. So that it can not be tried like ordinary questions of fact, which are independent of this sort of presumption."

In this case, Eliza Street intermarried with Charles Limes, in Fayette county, in the State of Ohio, in December, 1873. She and her husband separated within a few weeks after the marriage, never having kept house. She removed to Indiana soon after the separation, and on the 22d day of April, 1879, under her maiden name of Eliza Street, was in due form of law married to Horace G. Boulden. She lived with him as his wife until his death, which occurred in the year 1881. She subsequently intermarried with one Abijah Stewart, and died some time before the trial of this cause. It will thus be seen that she had been living separate and apart from Limes for a space of between five and six years before she married Boulden. In the absence of proof to the contrary, it would undoubtedly be presumed, in favor of the validity of her marriage with Boulden, that Limes was dead. In the absence of any showing to the contrary, what reason can be assigned, under the circumstances, for not presuming that the marriage relation between her and Limes had been dissolved by a legal divorce before her last marriage ?

It is urged that to require the appellants to prove that Eliza Street had not been divorced from Charles Limes prior to the date of her marriage with Boulden would be requiring them to prove a negative.

As we have seen from the authorities above cited, the law requires the party who asserts the illegality of a marriage to take the burden of that issue and prove it, though it may involve the proving of a negative.

The practice of requiring a party to prove a negative is

not new in Indiana.   The case of *Goodwin* v. *Smith,* 72 Ind. 113, was an application by Goodwin to obtain a license to retail intoxicating liquor.   It was held in that case that the petitioner was required to prove that he was not in the habit of becoming intoxicated, though such requirement involved the proving of a negative.   In that case ELLIOTT, J., who wrote the opinion, collected the authorities upon this subject, from which it appears that where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative.   *Smith* v. *Zent,* 59 Ind. 362 ; *Carey* v. *Sheets,* 67 Ind. 375 ; *Cummings* v. *Parks,* 2 Ind. 148 ; 2 Greenleaf Ev., section 454; *Smith* v. *Bettger,* 68 Ind. 254.   Many illustrations of the rule are found in these authorities, but we do not deem it necessary to lengthen this opinion by setting them out.

The right of the appellant to the land in dispute rests upon the supposed illegality of the marriage between Eliza Street and Horace G. Boulden, and in our opinion, before they can make good that right they must, by proper proof, remove every presumption of the legality of such marriage.

There appears in the record a transcript from the common pleas court in the State of Ohio from which it appears that Charles Limes obtained a divorce from Eliza Limes on the 26th day of May, 1883.   The land in dispute was conveyed by Eliza Boulden to Samuel Traver on the 17th day of December, 1881, and we are at a loss to know upon what ground this record was admitted in evidence against appellee in this cause. · The parties could neither say nor do anything that could affect the title to this land after the execution of the deed.   It may well be doubted as to whether this record, if admissible in evidence under the circumstances in this case, tended to prove that Eliza had not previously obtained a divorce from Charles Limes in the courts of Indiana ; at least it is not conclusive upon that question.   It is shown that she had resided in this State many years prior to the date at which the divorce was granted to Charles Limes in Ohio,

and was a resident of this State at the time, residing in Clinton county as the wife of Abijah Stewart. Our conclusion is, that the jury were authorized to find that there was not sufficient evidence in this cause to remove the presumption in favor of the legality of the marriage between Eliza Street and Horace G. Boulden, and that the evidence in the cause tends to support their verdict. In this conclusion we do not desire to be understood as fixing what would be the rule in cases of prosecutions for bigamy, where the defendant was living and presumed to be possessed of the evidence establishing the granting a divorce. There may be, and perhaps is, a distinction between that class of cases and the one at bar, where the party alleged to have been guilty of bigamy is dead and the contest is over the property.

We find no error in the record for which the decree of the circuit court should be reversed.

Judgment affirmed.

MITCHELL, J., dissents.

Filed May 11, 1889; petition for a rehearing overruled Sept. 25, 1889.