CASH *v*. CASH.

Opinion delivered December 16, 1899.

1. EVIDENCE—ADMISSION OF INFAMY.—The admission of plaintiff that she has been convicted of petit larceny dispenses with the necessity of record proof to establish her incompetency to testify.   (Page 281.)

2. MARRIAGE—PRESUMPTION.—The presumption of law being that a marriage is legal, the burden to show its illegality is upon the party who attacks it as illegal.   (Page 281.)

3. CONFLICT OF PRESUMPTIONS.—Proof that a former husband was living and undivorced five years before his wife remarried does not overcome the legal presumption in favor of the validity of the second marriage, the presumption of legality of the second marriage being stronger than the presumption that the former husband is still living.   (Page 281.)

4. WIDOW'S ALLOWANCE—APPRAISEMENT.—The allowance to a widow of specific articles of her husband's estate not exceeding $150 in value, based upon the appraisement made for the administrator, instead of upon an appraisement made at the instance of the widow, according to the requirements of Sand. & H. Dig., §§ 74, 75, is an irregularity merely, and not prejudicial to the administrator.   (Page 281.)

5. SAME—ALTERNATIVE JUDGMENT.—Under Sand. & H. Dig., §§ 74, 75, providing for setting aside specific articles to a widow and children, it is improper to enter an alternative money judgment against the administrator unless it is shown that the specific articles are not in the hands of the administrator at the time the judgment is rendered.   (Page 283.)

Appeal from Pike Circuit Court.

*Will P. Feazel*, Judge.

STATEMENT BY THE COURT.

John H. Cash died intestate in Pike county in 1897, and appellant administered upon his estate.   At the October term, 1897, of the probate court, Caldonia Cash, claiming to be the

widow of deceased, filed her two petitions. In the first, in behalf of herself and her four minor children, she alleged that the personal estate of decedent did not exceed in value $800, and prayed that $300 in value of the same be vested in her and said minors. In the second, in behalf of herself alone, she alleged the solvency of said estate, and that she was the widow of decedent, and prayed an additional allowance of $148.50 in specific articles named.

These petitions were granted, and the administrator appealed to the circuit court. In the circuit court the administrator answered both petitions, and alleged that said Caldonia was never lawfully married to said John H. Cash. The two petitions in the circuit court were consolidated and tried as one cause at the February term, 1898, and the court found that the estate of defendant was solvent, and that the said Caldonia had been legally married to John H. Cash, and was his widow. The court adjudged that the widow and minors were entitled to $300 worth of personal property (not described either in the petition or in the judgment), and that the widow recover an additional $148.50 worth of personal property, specifically described in the judgment; after which the judgment proceeded as follows: "It is by the court considered, ordered and adjudged that the plaintiff have and recover of and from the defendant, Geo. A. Cash, as administrator of the estate of John H. Cash, the sum of $300, with 6 per cent. interest from the 12th day of October, 1897, and that the plaintiff, Caldonia Cash, do have and recover of and from the said Geo. A. Cash, as administrator, the sum of $150, with 6 per cent. interest from the 12th day of October, 1897; provided, that if the defendant shall, within ten days from this date, deliver to the plaintiff the property above ordered to be delivered, this alternative judgment shall be satisfied in full, and, if only a part of said property be so delivered within said ten days, this judgment shall be satisfied to the extent of the value of the property so delivered." Appellant filed his motion for a new trial, which was overruled, exceptions saved, a bill of exceptions duly signed and filed, and appellant thereupon appealed to this court. The motion for a new trial raised all questions that will be discussed in appellant's brief.

At the trial it was admitted that the plaintiff, then Caldonia. Karr, on December 11, 1879, was lawfully married to one Miles Hankins, and that on January 8, 1890, she was again married in due form of law to John H. Cash.

James L. Townsend, for defendant, testified: "After the death of John H. Cash I visited Caldonia Cash, and was accompanied by George A. Cash, D. W. Cash and W. P. Hammons. I asked her if she had been divorced from Miles Hankins. She said, 'No,' but that he had left her about five years prior to her marriage to Jno. H. Cash, and that she had not heard from him since he left her." D. W. Cash, George A. Cash and W. P. Hammons corroborated the testimony of Townsend.

The plaintiff, Caldonia Cash, to sustain her cause, offered to introduce herself as a witness. The defendant objected to her being sworn on the ground that she had been convicted of petit larceny, and examined her as to the truth of said charge; and she admitted that in Pike county, Arkansas, a few days before, she had been convicted and fined on a criminal charge against her for petit larceny. The court ruled that she was a competent witness, and that her infamy arising from a conviction for larceny could only be established by a certified copy of the record of her conviction. She testified: "Miles Hankins, my former husband, left me in the Indian Nation about October 15, 1884. He said some day he would come back after me. I had not seen or heard from him for over five years at the time of my marriage to Jno. H. Cash." This was all the testimony.

The court declared the law to be that the burden of proof was on the defendant, Geo. A. Cash, to prove that at the time of the marriage of Caldonia to Jno. H. Cash the said Hawkins was alive. Otherwise, the finding of the court would be (and in this case, for want of proof, was) in favor of the plaintiff, Caldonia Cash,—to which ruling defendant excepted.

*J. H. Crawford*, for appellant.

The alternative judgment was unnecessary, as appellee could have brought replevin for the property vested in her by

the judgment.   3 J. J. Marsh. 308.   Appellee, by reason of
her infamy, was incompetent to testify in her own behalf.
The burden was on appellee to show the death of her first
husband.   The alleged desertion took place in the Indian Terri-
tory, and the presumption is that the common-law period, and
not that fixed by our statute, as raising the presumption of
death should govern.   30 Ark. 230; 2 Greenl. Ev. § 278f; 24
Ga. 494.

*Murry & Callaway,* for appellee.

The infamy of a witness can be proved only by the record
of conviction.   The burden is on the one who attacks a mar-
riage to show its illegality.   Bish. M. & Div. §§ 457–8; 1 Greenl.
Ev. § 35.   The presumption of legality is stronger than the
presumption that the former husband still lives.   55 Am. Rep.
883; 52 Am. St. Rep. 180; 22 Ark. 89–90.

HUGHES, J., (after stating the facts.)   Caldonia Cash ad-
mitted on the trial of the cause that she had been, but a short
time before the trial, convicted of petit larceny, and this admis-
sion, made against her interest, dispensed with further proof of
the fact.   Having been convicted of petit larceny, she was in-
competent to testify, as there is no proof she had been pardoned.

It is in evidence that she married in due form of law
Jno. H. Cash.   The court properly held that the presumption
of law is that this was a legal marriage, and that the burden
to show its illegality was upon the party attacking the validity
of the marriage on the ground of illegality to show it by evi-
dence.   It is not presumed that the appellee violated the law.
The presumption that the marriage was legal is stronger than
the presumption that Miles Hankins, to whom she was first
married, was living at the time of the second marriage.   Her
marriage is presumed to have been "lawful, innocent and not
criminal."   *Halbrook* v. *State,* 34 Ark. 518.

The judgment of the court allowing the appellee $148 at
appraised value in articles selected by her, belonging to the
estate, and articles worth $300 according to appraised value, was
correct, but seems to have been based upon the appraisement
made for the administrator, instead of an appraisement made at

the instance of appellee, according to the requirements of section 74, Sandels & Hill's Digest. This was irregular. But was it prejudicial?

The pertinent sections of the statute are as follows:

"Sec. 3. When any person shall die leaving a widow and children or widow or children, and it shall be made to appear to the court that the personal estate of such deceased person does not exceed in value the sum of three hundred dollars, the court shall make an order vesting such personal property absolutely in the widow and children, or widow or children, as the case may be; and in all cases where the personal estate does not exceed in value the sum of eight hundred dollars, the widow or children, as the case may be, may retain the amount of three hundred dollars out of such personal property at cash price.

"Sec. 4. When any person shall die, leaving children but no widow, the court shall, upon application made to him for said children, appoint appraisers and cause to be made appraisement of the personal property of the estate for the purpose of the vestment of such property, as provided by section 3.

"Sec. 74. Any widow desiring to avail herself of the provisions of sections 3, 4 and 74 [73], shall, within thirty days after the death of the deceased, cause to be made an appraisement of all the personal property of the estate by three disinterested householders of the county, whose duty it shall be to view and appraise all the personal property of the estate except such articles as are reserved as the absolute property of the widow by section 73, and shall make a full and complete list of the same, describing each article and the value thereof, and showing the total value of the appraisement, which shall be signed by them, or any two of them, and attach thereto an affidavit reciting that they are not of kin to the widow or the deceased, and not in any way interested in the estate, and that they have to the best of their abilities appraised the property to them shown, and each of said appraisers shall receive for his services the sum of one dollar for each day he may have been engaged in making said appraisement, to be paid by the person for whose benefit the same was made, and the list of appraisement shall be immediately filed with the clerk of the

county court of the county; *provided*, no widow or children of any deceased person shall ever be barred of any of the benefits of sections 3 and 73 by failure to make appraisement, or file list of the same within the time specified in this section.

"Sec. 75. In addition to the property specified in section 73, the widow, when the the estate is not insolvent, may take such personal property as she may wish, not to exceed the appraised value of $150, and the executor or administrator shall deliver to the widow such articles as she may select, not exceeding the value aforesaid, and shall take her receipt therefor, which shall be a good voucher in the settlement of his accounts."

Was it proper to render the alternative judgment in this case. The widow was certainly entitled to $150 worth of property at appraised value, and in specific articles selected by her; but, if not selected by her; and not delivered to her, upon a selection by the administrator, could she have judgment for money sufficient to cover the value of property not delivered to her? The evidence does not show whether the property was in hands of the administrator, or had been sold or disposed of, at the time the judgment was rendered. If on hand, it seems the court ordering it delivered to the widow might enforce its judgment by proper orders. The judgment of this court is that the administrator should have obeyed the order of the court by delivering to the appellee the $148, and the $300 of personal property in specific articles at appraised value. The alternative judgment for the money value of the property was improperly given.

The judgment of the court below is affirmed, with this modification: that there shall be no judgment in the alternative, but judgment only for delivery of the property as indicated at appraised value, to be selected by the appellee; and it is so ordered.