BROWN, administrator, *v.* PARKS *et al.*
PARKS *v.* PARKS *et al.*

Nos. 8186, 8187.   JULY 14, 1931.   REHEARING DENIED SEPTEMBER 18, 1931.

*Brown & Brown,* for *H. L. Brown,* administrator.

*John D. Stewart* and *J. Wightman Bowden,* for Eva Parks.

*Little, Powell, Reid & Goldstein* and *James K. Jordan,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) This is a case of a competition in marriages. Two women, one a brown woman who is called Nannie Parks, and another woman named Eva Templeman or Eva Parks, the exact shade of whose color is not disclosed by the record, each and both claim to be the wife of one W. L. Parks, also known as Willie Parks. Doubtless the question of the marital connection of either one of them would possess no interest were it not that it appears from the record that the ownership of a considerable sum of money and a house and lot was involved in the question as to who is the lawful wife of the deceased intestate. It seems from undisputed testimony that if Eva in fact ever married W. L. Parks, whose estate is involved in this litigation, her marriage vows were very lightly regarded, for she entered into other matrimonial relations for several years practically ad libitum, and has collected policies of insurance on the death of at least one husband acquired by her subsequently to the alleged marriage with Willie Parks. However, as we held when this case was here before (*Brown* v. *Parks,* 169 *Ga.* 712), no amount of misbehavior on the part of Eva Parks would of itself dissolve a valid pre-existing marriage. This principle was respected and followed by the able trial judge, who submitted to the jury for answer and determination the question who is the legal wife of the deceased, and this question was answered by the jury after a review of the entire evidence by a finding that Nannie Parks was the legal wife of the deceased. This question goes to the vitals of the entire proceeding—is the crux of the case. If the evidence does not authorize the finding returned by the jury, the case should be remanded for another trial. If the cause is to go back for another trial, this court should rule upon several other assignments of error, for the instruction and guidance of the lower court in another hearing of the case. If the evidence authorized the jury to find that Nannie Parks was the lawful wife of W. L. Parks, the state of the evidence in the record is such that

other questions are altogether immaterial. Questions as to amendments, as to resulting trust, and of practice, as raised in regard to the impeaching testimony which was admitted by the court, become entirely immaterial; for if Nannie was the lawful wife, she became the sole heir of the deceased and entitled to the estate, which was shown to be without debts. There would be no impediment to the discharge of the administrator and delivery of all assets in his hands to the sole heir, the wife. In making this statement we bear in mind that if error on the part of the court in any stage of the trial improperly or illegally affected the jury and caused or contributed to a finding in favor of Nannie rather than Eva, then the verdict should properly be set aside. On the other hand, though there may have been some errors in the conduct of the trial, if they did not bear upon or contribute to the finding of the jury on this paramount question, they could not be treated as other than entirely immaterial and therefore harmless errors.

In the petition the plaintiff, Nannie Parks, sets up that she was the lawful wife of the deceased. She establishes that fact by proof of a ceremonial marriage under authority of a marriage license, solemnized by a minister of the gospel in the presence of at least one other witness besides the minister and the contracting parties; and this testimony is undisputed. The ceremony was performed under authority of a license on the 27th day of January, 1904, and their association as man and wife continued without interruption for about 23 years. This makes a prima facie case, which imposes upon any party attacking the validity of the marriage the burden of presenting proof to establish a better preexisting wedlock. *Norman* v. *Goode,* 113 *Ga.* 121 (38 S. E. 317). "Marriage is favored by the law; concubinage is odious. When a man and a woman are living together as husband and wife, the law will hold them to be such, even against strong probabilities that they are not. 1 Bish. Mar. Div. & Sep. § 77. When a marriage has been regularly solemnized and the parties live together as man and wife, there is a presumption that the parties had capacity to contract the marriage, and of the existence of all other facts necessary to render the marriage valid; and this presumption prevails until the contrary appears. The burden is upon him who attacks the validity of the marriage to show that it is invalid, by clear, distinct, positive and satisfactory proof. Megginson *v.* Meggin-

son, 14 L. R. A. 540 [21 Or. 387, 28 Pac. 388]. The presumption as to the validity of the marriage can be negatived only by disproving every reasonable possibility. The status of the woman is involved, as well as the legitimacy of children, and every reasonable presumption must be indulged which will relieve the woman of the charge of being a concubine and her children from being declared bastards. Piers *v*. Piers, 2 House of Lords Cases, 380; Cash *v*. Cash, 67 Ark. 278 [54 S. W. 744]; Wilkie *v*. Collins, 48 Miss. 496. If at the time of the marriage one of the parties had a living spouse, of course the marriage is void. But it is incumbent upon him who attacks the marriage upon this ground to overcome the presumption of its validity, resulting from the solemnization of the marriage ceremony, and cohabitation by the parties under the belief that they are lawfully married; and to establish that the former spouse was living at the time that the second marriage was entered into. . . While there may be a presumption of life when the period between the time the spouse was last heard from and the second marriage is less than seven years, under such circumstances this presumption of life conflicts with the presumption of innocence which the law raises in favor of the party contracting the second marriage. The presumption that the party contracting the second marriage is innocent of the crime of bigamy is, in such circumstances, stronger than the presumption that the former spouse is in life. Where the presumption of innocence and of the validity of the marriage conflicts with the presumption of life, and neither presumption is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the marriage has generally been held to be the stronger, and to prevail over the presumption of the continuance of the particular life; and this has been held although the time elapsing between the last knowledge of the former spouse and the second marriage is much less than seven years. The proposition thus stated was laid down by Shope, J., in Johnson *v*. Johnson, 114 Ill. 611 (55 Am. Rep. 883), in an opinion where numerous cases are considered and reviewed. In Cash *v*. Cash, 67 Ark. 278 [supra], the period elapsing between the time the first husband was last heard of and the date of the second marriage was only five years. In Town of Greensborough *v*. Town of Underhill, 12 Vt. 604, the period was less than two years. In Wilkie *v*. Collins,

48 Miss. 496, the period was a little more than two years. In Kelley v. Drew, 12 Allen, 107 (90 Am. Dec. 138), only four years had elapsed from the time that the first husband was last heard of. Even in a prosecution for bigamy, where the defense is the absence of a former spouse for the length of time prescribed by statute as a ground of defense, the burden of proof is upon the State to show that the former spouse was living at the time of the second marriage. Keezer on Mar. & Div. § 98."

. We have inserted the foregoing quotation from *Murchison* v. *Green,* 128 *Ga.* 339 (57 S. E. 909, 11 L. R. A. (N. S.) 702), to indicate the great extent to which the courts of this State have gone in sustaining the validity of a marriage presumptively lawfully entered into, when the same is attacked by evidence that the asserted marriage was in fact invalid and void because of the incompetence of one of the parties to the alleged marriage to contract marriage. The cases to which we have referred relate to instances in which the second marriage was bigamous by reason of the fact that one of the contracting parties had a living spouse at the time of the second marriage. In the present case there was evidence to authorize the jury to find that the person who was married to Eva Templeman, alias Parks, was dead at the time that the intestate married Nannie Kenney, and therefore that Eva Templeman, alias Parks, is a mere interloper attempting to collect the estate. As said by Mr. Justice Cobb in *Murchison* v. *Green,* supra. "It is altogether reasonable that one who attacks the marriage for the mere purpose of pecuniary gain to himself, and this, too, after the death of the party under whom such person claims as a near relative, should carry the burden of showing that the second marriage contracted by his relative was invalid. If, to show its invalidity, it is necessary that it be established that the former spouse was in life, then the burden of proving that he was living rests upon him who asserts this fact to destroy the validity of the marriage." In the case at bar it was proved without contradiction that Eva Parks, or Templeman, informed Charlie Touchstone many years ago, when she was about to marry him, that the Parks she married was dead. The plaintiff in error did not herself deny this statement; and as all witnesses are presumed to speak the truth, especially when testifying against their own interest, we agree with the learned trial judge, in overruling the motion for a

new trial upon this ground, that the verdict finding that Nannie Parks is the lawful wife of the deceased is fully authorized by the evidence. Of all the numerous witnesses who testified in this case, thereby adding another thread to the tangled skein in this case, only one witness testified to any circumstance that tended to connect the intestate as the person who was married to Eva Brown in Griffin, Georgia, by Judge E. W. Hammond. It is also to be borne in mind that the jury had before them a photostatic copy of the license authorizing the marriage of Eva Brown to the intestate as she claimed, and they were by no means bound to find that the name of the male contracting party was Willie Parks. On the contrary, though the writing is not illegible, the surname succeeding the Christian name of the would-be husband much more resembles Pamks, than Parks. Under the rules to which we have referred, the identity of the name upon the license, whatever it may be, is not sufficiently clear and unequivocal to require the jury to find that it was a license authorizing the marriage of Willie Parks or W. L. Parks. In carrying the burden of showing that the marriage of the deceased to Nannie Kenney was void, no evidence was introduced which tended to show that the deceased had any knowledge that Eva was alive at the time that he married Nannie, even if it be suspected that he was the party who in fact was joined in wedlock to Eva in 1889 or 1890. And so, as we have already cited from Mr. Justice Cobb in the *Murchison* case, the presumption of innocence of the crime of bigamy is superior to and controls any presumption of life. As was held in *Grand Lodge* v. *Barnard, 9 Ga. App.* 71 (70 S. E. 678) : "Where a man has been married to a woman who has gone away and has not been heard of for more than seven years and is presumed to be dead, and he has, after the expiration of the seven years, contracted marriage with another woman, the relationship between him and the second woman is not that of concubinage, even though it develops that the first wife was not in fact dead. Until the fact that the first wife is still alive becomes known to the parties and some steps are taken to annul the second marriage, the marriage state between the man and the second wife is not an unlawful relationship, and the parties thereto have a status which confers rights recognized by law. *Eubanks* v. *Banks, 34 Ga.* 407." This was a matter of fact for the jury, and they were authorized to find

that the person who was married to Eva Brown was not the deceased, and that under the undisputed evidence Nannie Parks was the wife of the deceased. As held by this court in *Equitable Life Assurance Society* v. *Paterson*, 41 *Ga.* 338 (5 Am. R. 535) : "When one, as the agent of his reputed wife, represented to an insurance company that she was his wife, and effected an insurance upon his own life in her name, as her agent, for her benefit, and the truth of the case was that the marriage was void by reason of the reputed wife having a former lawful husband living at the time of the second marriage, . . the policy is not void by reason of the illegality of the last marriage, unless it further appears that the said reputed husband and wife knew, at the time the policy was effected, that at the time of their supposed marriage the lawful husband of the wife was living, and the marriage illegal, and failed to inform the company of the fact." Under this doctrine, Eva Parks would be estopped in this contest to assert that she is entitled to the estate of the deceased, after having admitted, in order to obtain another spouse, that the Willie Parks she married was dead. So far as appears from the evidence, the W. L. Parks who married Nannie Kenney, and whose estate is now the subject of controversy, had no knowledge of Eva or of her fate after their matrimonial connection, if any ever existed, was terminated. Certainly, under the evidence in the case, from her conduct he had the right to presume, if in fact he was ever acquainted with Eva, that she had obtained a divorce from him if he married her, because she thereafter married, not only once, but several times. In a consideration of this evidence, the verdict finding that Nannie Parks was the lawful wife of the intestate, and therefore heir to his property, is supported by a principle which is well recognized and has received the sanction of a majority of the highest courts of our sister jurisdictions. The law raises a strong presumption, where a marriage has been shown, of its legality, the strength of which increases with the lapse of time. The presumption of the validity of a marriage is not overcome by proof of a former marriage of the husband and the testimony of his first wife that she has taken no steps for a divorce and that no papers have been served upon her. The law presumes morality, and not immorality; marriage, and not concubinage. And so in Pittinger *v.* Pittinger, 28 Colo. 308 (64 Pac. 195, 89 Am. St. R. 194), it was said:

"Appellee having been named as the beneficiary in the original certificates, and designated therein as the wife of the deceased, she is presumed to be a legal one, and bear the relation to the insured designated (Knights of Honor v. Davis, 26 Colo. 252, 58 Pac. 595), so that to the extent that the rights of appellant are dependent upon the fact that appellee was not the wife of deceased, the burden of proof rested with her to establish this issue by a preponderance of the evidence. On this subject the first wife testifies to the effect that she was married to deceased in 1876. She took no steps herself to obtain a divorce, and states that no papers for that purpose were ever served upon her. This is the only testimony tending to establish that the marriage relation between herself and deceased was not dissolved, as the evidence of the other witnesses on behalf of appellant on this subject is immaterial. As against this testimony we have the undisputed evidence to the fact that a marriage ceremony was regularly solemnized between appellee and deceased, and the question squarely presented is, does the proof of the existence of the former marriage relation of deceased and the testimony of the former wife establish that the marriage of appellee was invalid. No man is presumed to do an unlawful act. When a marriage has been shown, the law raises a strong presumption in favor of its legality. By some of the authorities this presumption is said to be one of the strongest known to the law. Its strength increases with the lapse of time. This presumption arises because the law presumes morality and not immorality, and that every intendment is in favor of matrimony. Lampkin v. Travelers' Ins. Co., 11 Colo. App. 249, 52 Pac. 1040; 2 Nelson on Divorce and Separation, § 580; Boulden v. McIntire, 119 Ind. 574, 12 Am. St. Rep. 453, 21 N. E. 445; In re Rash's Estate, 21 Mont. 170, 69 Am. St. Rep. 649, 53 Pac. 312; Teter v. Teter, 101 Ind. 129, 51 Am. Rep. 742; Johnson v. Johnson, 114 Ill. 611, 55 Am. Rep. 883, 3 N. E. 232. This presumption applies with peculiar force in favor of one who is unable to prove affirmatively that the man with whom she entered into the marriage relation in good faith was divorced from a former wife. . . It is contended on behalf of appellant that the marriage of deceased to his first wife having been shown, this is sufficient to overcome the presumption in favor of the legality of the marriage between deceased and appellee. While it is true that it is a presumption of law that a fact con-

tinuous in its nature, such as marriage, continues after its existence is once shown, yet this presumption is not sufficient in all cases to overthrow the presumption of law in favor of innocence. Klein v. Laudman, 29 Mo. 259. In other words, under the facts of this case the presumption of the continuance of the first marriage, based upon the naked fact that it was solemnized, is not equal in probative force to the presumption in favor of the legality of appellee's marriage. Erwin v. English, 61 Conn. 502, 23 Atl. 753."

It will be noted that the testimony of Eva Parks was practically identical with the testimony of the first wife in the Pittinger case, supra. In a note to this case by the editor of the American State Reports it is said: "Every intendment of the law favors matrimony. As is often said, the law presumes morality, not immorality; marriage, not concubinage; legitimacy, not bastardy. When a marriage in fact has been shown, the law raises a presumption that it is valid and casts the burden on him who questions it to establish its invalidity. It is one of the strongest known to the law: Jones v. Gilbert, 135 Ill. 27, 25 N. E. 566; State v. Worthingham, 23 Minn. 528; Johnson v. Johnson, 30 Mo. 72, 77 Am. Dec. 598; Hynes v. McDermott, 91 N. Y. 451, 43 Am. Rep. 677; In re Estate of Megginson, 21 Or. 387, 28 Pac. 388 [14 L. R. A. 540]; Piers v. Piers, 2 H. L. Cas. 331. When a marriage is consummated, it is not presumed that there were legal impediments, such as a former marriage of either of the parties; and if such a marriage is shown to have existed, it will often be presumed to have been dissolved or terminated prior to the second marriage: Halbrook v. State, 34 Ark. 511, 518, 36 Am. Rep. 17; Lampkin v. Travelers' Ins. Co., 11 Colo. 249, 52 Pac. 1040; Harris v. Harris, 8 Ill. App. 57; Cooper v. Cooper, 86 Ind. 75; Franklin v. Lee, [30 Ind. App. 31] 62 N. E. 78; Le Brun v. Le Brun, 55 Md. 496; Senser v. Bower, 1 Penn. & W. 450; Thomas v. Thomas, 124 Pa. St. 646, 17 Atl. 182." The courts have not confined themselves to the rule that the presumption of innocence is superior to the presumption of the continuance of life, but from the facts and circumstances of a case a presumption may arise that any previous marriage has been legally dissolved, and in carrying the burden of proof the party attacking the validity of a legal marriage must carry the burden of showing that the marriage has not been dissolved. "If it is shown that a party to a marriage has contracted a previous marriage and that his or her

former spouse is still living, this has been held not to destroy the prima facie validity of the second marriage. In such a case it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and of the innocence of the parties to it: Pittinger v. Pittinger (the principal case) [supra]; Erwin v. English, 61 Conn. 502, 23 Atl. 753; Schmisseur v. Beatrie, 147 Ill. 210, 35 N. E. 525; Boulden v. McIntire, 119 Ind. 574, 12 Am. St. Rep. 453, 21 N. E. 445; Wenning v. Teeple, 144 Ind. 189, 41 N. E. 600; Tuttle v. Raish, [116 Iowa, 331], 90 N. W. 66; Alabama etc. Ry. Co. v. Beardsley, 79 Miss. 417 [89 Am. St. R. 660], 30 South. 660; Waddingham v. Waddingham, 21 Mo. App. 609; Hadley v. Rash, 21 Mont. 170, 69 Am. St. Rep. 649, 53 Pac. 312; Goldwater v. Burnside, 22 Wash. 215, 60 Pac. 409. See also Bull v. Bull, 29 Tex. Civ. App. 364, 68 S. W. 727." All the authorities seem to agree that where an apparently valid marriage is sought to be attacked by testimony as to a pre-existing marriage, the weight of inferences and presumptions is peculiarly a matter for determination by the jury in each particular case. Under this rule it can not be said the jury were not authorized to find that Nannie Parks was the lawful wife of the deceased; and therefore it can not be said that the trial judge erred in overruling the motion for a new trial.

*Judgments affirmed. All the Justices concur except*
ATKINSON, J., who dissents from the rulings stated in headnotes 1 and 2.

BECK, P. J., and GILBERT, J., concur in the judgment.