MURCHISON, administrator, *v.* GREEN.

1. All the presumptions necessary to make a marriage valid attach on proof of a formal ceremony of marriage and cohabitation by the parties under the belief that they were lawfully married; and the burden is on those who attack the validity of the marriage, to show its invalidity by clear, distinct, positive, and satisfactory proof. There is in such case a presumption that the parties had capacity to contract marriage; and this presumption prevails until overcome by proof.
2. Where the presumption of the validity of a marriage, arising from the performance of a ceremony, conflicts with the presumption of a continued life of a former spouse of one of the parties, if neither is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the second marriage will prevail over the presumption of the continuance of life of the former spouse.
3. The amended answer of the defendant set up no defense and should have been stricken on demurrer.

Argued March 4,—Decided May 16, 1907.

Complaint for land. Before Judge Felton. Houston superior court. August 16, 1906.

Moore, as administrator of Mary Flournoy, brought his petition against Green, alleging: Plaintiff is the administrator of the estate of Mary Flournoy, who died in 1903. At the time of her death Green was living with her, claiming to be her husband, but they were never legally married, for the reason that her former husband, Flournoy, was, at the date of the marriage, still in life, and died only a short while before Mary Flournoy died. The heirs at law of Mary Flournoy are her brothers and sisters. Not long after the pretended marriage between Green and Mary Flournoy, her former husband was seen in life in the city of Macon, not more than one year before Mary Flournoy died, and he and his wife were never divorced. The defendant has in possession certain described property, both real and personal, which was the property of Mary Flournoy. The defendant is insolvent, and an injunction is prayed against him, to restrain him from paying out any of the money which he has in hand and the rents and profits of

the land, and from interfering with the estate of Mary Flournoy in any way. The petition was amended so as to pray for the recovery of the property alleged to be in possession of Green. The defendant filed an answer, in which he alleges, that he was lawfully married to plaintiff's intestate, who at the time of the marriage was known to him as Mary Moore; that at the time of the marriage he had no reason to believe that she had a living husband; and that he does not now have any reason to believe or suppose that such is the fact; and he charges that all allegations to the contrary are false. He alleges that he was a kind and loving husband to her up to the time of her death. The answer denies that he is in possession of some of the property alleged in the petition, and admits that he is in possession of the other; it also denies that he is insolvent.

The defendant filed an amendment to his answer, in which he alleged that if it should be proved that his wife had been married and her former husband was living at the time the defendant married her, the defendant had no knowledge of these facts, and he believed she was a single woman and that she understood that she was herself; that the marriage was contracted in good faith, according to the forms of law, and that he lived with her faithfully for seven years, and during that entire time gave all of his time and services to her as her husband, believing that she was his wife; that she was an invalid and he waited upon her and in good faith rendered her such services as a faithful husband should render; that the services rendered and the debts paid by him for her amounted to more than the value of the property that she died possessed of, and that in equity and good conscience he is entitled to have and retain the property for his services, inasmuch as it must have been in contemplation of both himself and his wife, during her life, that he would have the property at her death; that had he not so thought, he never would have married her, and that he knows his wife was honest in not telling him the contrary, and that she verily believed she was a single woman; yet if she were under a disability to contract a valid marriage with him, this fact would operate as a legal fraud for which he would have a right of redress out of her estate, which was insufficient to pay for the services rendered during her lifetime and for the money paid out for her debts. It is alleged that there are no

creditors of her estate, and that if the defendant is not her sole heir her heirs are unknown; that if her former husband was living at the time of her death, his heirs would be entitled to the estate if he is dead. The answer also alleges that the administration was not taken out in good faith, but for the purpose of securing fees to the administrator. The answer then proceeds upon the theory that the defendant is a purchaser for value of the property of the estate of his wife, and seeks to set up the value of improvements, etc., made upon the property, as provided in the act of 1897, and prays for an accounting. It is alleged that he paid the funeral expenses of his wife and he is entitled to be reimbursed for that amount. The answer concludes with the following paragraph: "The defendant shows that the said Mary Green, recognizing her obligations to defendant, expressly agreed, in consideration of these obligations, that all of her property, now in defendant's possession, should be his. This agreement was founded upon a valuable consideration and is binding upon her administrator."

To this answer the plaintiff filed a demurrer upon various grounds. The demurrer was overruled, and the plaintiff filed exceptions pendente lite. The case proceeded to trial and resulted in a verdict for the defendant. The plaintiff's motion for a new trial was overruled, and he excepted, assigning error upon the judgment overruling the exceptions pendente lite and the judgment overruling the motion for a new trial. Moore died while the suit was pending, and Murchison, as administrator of Mary Flournoy, was made a party in his stead.

*M. G. Bayne,* for plaintiff. *Mathews & Riley,* for defendant.

COBB, P. J. (After stating the facts.)

1, 2. Marriage is favored by the law; concubinage is odious. When a man and a woman are living together as husband and wife the law will hold them to be such, even against strong probabilities that they are not. 1 Bish. Mar., Div. & Sep. § 77. When a marriage has been regularly solemnized and the parties live together as man and wife, there is a presumption that the parties had capacity to contract the marriage, and of the existence of all other facts necessary to render the marriage valid; and this presumption prevails until the contrary appears. The burden is upon him who attacks the validity of the marriage to show that it is invalid, by

clear, distinct, positive, and satisfactory proof. Megginson *v.* Megginson (Oregon), 14 L. R. A. 540. The presumption as to the validity of the marriage can only be negatived by disproving every reasonable possibility. 'The status of the woman is involved, as well as the legitimacy of children, and every reasonable presumption must be indulged which will relieve the woman of the charge of being a concubine and her children from being declared bastards. Piers *v.* Piers, 2 House of Lords Cases, 380; Cash *v.* Cash, 67 Ark. 278; Wilkie *v.* Collins, 48 Miss. 496. If at the time of the marriage one of the parties had a living spouse, of course the marriage is void. But it is incumbent upon him who attacks the marriage upon this ground to overcome the presumption of its validity, resulting from the solemnization of the marriage ceremony, and cohabitation by the parties under the belief that they are lawfully married, and to establish that the former spouse was living at the time that the second marriage was entered into.

As a general rule the law will presume the death of a person, after his absence for seven years, when nothing has been heard from him. This is, however, a mere presumption and may be rebutted by proof. If one enters into a second marriage contract in good faith, honestly believing that the former spouse is dead, by reason of the fact of abandonment and not having been heard from, it is not indispensable that seven years should have elapsed from the time that the spouse was last heard of, in order to establish the validity of the second marriage. While there may be a presumption of life when the period between the time the spouse was last heard from and the second marriage is less than seven years, under such circumstances, this presumption of life conflicts with the presumption of innocence which the law raises in favor of the party contracting the second marriage. The presumption that the party contracting the second marriage is innocent of the crime of bigamy is, in such circumstances, stronger than the presumption that the former spouse is in life. Where the presumption of innocence and of the validity of the marriage conflicts with the presumption of life, and neither presumption is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the marriage has generally been held to be the stronger, and to prevail over the presumption of the continuance

of the particular life; and this has been held although the time elapsing between the last knowledge of the former spouse and the second marriage is much less than seven years. The proposition thus stated was laid down by Shope, J., in Johnson v. Johnson, 114 Ill. 611 (55 Am. Rep. 883), in an opinion where numerous cases are considered and reviewed. In Cash v. Cash, 67 Ark. 278, the period elapsing between the time the first husband was last heard of and the date of the second marriage was only five years. In Town of Greensborough v. Town of Underhill, 12 Vt. 604, the period was less than two years. In Wilkie v. Collins, 48 Miss. 496, the period was a little more than two years. In Kelley v. Drew, 12 Allen, 107 (90 Am. Dec. 138); only four years had elapsed from the time that the first husband was last heard of. Even in a prosecution for bigamy, where the defense is the absence of a former spouse for the length of time prescribed by statute as a ground of defense, the burden of proof is upon the State to show that the former spouse was living at the time of the second marriage. Keezer on Mar. & Div., §98. See, in this connection, *Parnell v. State,* 126 *Ga.* 103.

It is altogether reasonable that one who attacks the marriage for the mere purpose of pecuniary gain to himself, and this, too, after the death of the party under whom such person claims as a near relative, should carry the burden of showing that the second marriage contracted by his relative was invalid. If, to show its invalidity, it is necessary that it be established that the former spouse was in life, then the burden of proving that he was living rests upon him who asserts this fact to destroy the validity of the marriage. The presumption that his deceased relative was a wife, and not a concubine, prevails until he brings evidence clear and satisfactory that the relations with the man that she lived with were unlawful. If the second marriage is contracted in good faith, but one of the parties to the same is under an incapacity to contract marriage, on account of a prior marriage undissolved, and such marriage is thereafter dissolved by the death of the former spouse, and the parties continue thereafter to live together as husband and wife, there is, under some circumstances, a presumption that a marriage between them was had after the disability was removed. This is especially true in those jurisdictions where the common-law marriage is recognized. 2 Nelson on Div. §580. See

also Johnson *v.* Johnson, 1 Coldwell (Tenn.), 626. If, at the time the second marriage is solemnized, the party under disability knows that such disability exists, the presumption of innocence can not be indulged in his favor. O'Gara *v.* Eisenlohr, 38 N. Y. 302. If, at the time the defendant contracted the marriage with Mary Moore, he in good faith believed that she was an unmarried woman, and she, in like good faith, believed at that time that her former husband was dead, the marriage between them must be treated as valid, until it is established by clear and satisfactory proof that her former husband was in life at the time of her second marriage. It is claimed by the plaintiff that there were facts and circumstances proved in aid of the presumption of life; that is, that the former husband was seen alive after the marriage between the defendant and Mary Moore, and that she admitted, during her lifetime, that she knew that her former husband was living. These were all questions for the jury, and the evidence was of such a character as to support a verdict either way; and if no error of law was committed at the trial, requiring the reversal of the judgment, the refusal of the judge to grant a new trial on the general grounds of the motion will not be disturbed.

3. The amended answer of the defendant, an abstract of which is set forth in the statement of facts, was demurred to by the plaintiff, and the demurrer was overruled. This answer sets up two grounds of defense; one being that the defendant is entitled to recover of the plaintiff the value of the services he rendered to his wife during coverture, in the event that it was established that the marriage was void. The other ground of the defense was that on account of having contracted the marriage in good faith, if it should be held void he should be treated as a purchaser for value of the land belonging to his wife and should be allowed to set off improvements made thereon during her lifetime and after her death before he had knowledge of her incapacity to contract. There is a general averment, at the conclusion of the answer, that his wife recognized her obligations and expressly agreed, in consideration thereof, that all of her property should be his. This portion of the answer is set out in full in the statement of facts. So far as this attempts to set up a contract between the defendant and his wife, the averments of the answer are not sufficient to establish a binding contract. It is not alleged that she agreed to make a

deed during her lifetime, nor is it alleged that she agreed to make a will in his favor, nor is any fact alleged which would be sufficient to establish the fact that any other arrangement was contemplated between the parties than that which follows from the marriage relation. The wife recognized that her husband was dutiful, and, as she had no children, that he would be her heir.

We think this portion of the answer is too vague and indefinite to be the foundation of any judgment in favor of the defendant. In reference to that portion of the answer which seeks to hold the administrator liable for services rendered by the defendant to his wife during her lifetime, it appears that he rendered only those services which every husband is under legal and moral obligation to render; and there is nothing in the averments to indicate that it was within the contemplation of either party that the relation of debtor and creditor should exist between the husband and wife. If the marriage between the defendant and Mary Moore was invalid, he can not, under the facts set forth in the answer, be held to occupy the position of purchaser for value of her estate. According to the averments of the answer he honestly believed that she was his lawful wife, and she, with like honesty, believed that he was her lawful husband; and it is apparent from the averments of the answer, when taken as a whole, that nothing else was ever contemplated between them than that each should have the rights that would flow from the relation of husband and wife. He could not in any sense be treated as a purchaser for value, and therefore the act of 1897 (Acts 1897, p. 79; Van Epps' Code Supp, § 6653) had no application whatever to the case. The amended answer was subject to the demurrer and should have been stricken. While it appears from the charge of the judge that the only issue submitted to the jury was the question of the validity of the marriage of Mary Moore to the defendant, still he overruled the demurrer to the amended answer of the defendant and permitted testimony to go before the jury which would have been wholly irrelevant, except for the presence of that answer in the case. How far this evidence may have prejudiced the case of the plaintiff we can not tell; and a new trial must be had upon the issue of the validity of the marriage, with no other evidence before the jury than such as is relevant to that issue.

*Judgment reversed. All the Justices concur.*