22930.   BELLE ISLE *v.* BELLE ISLE *et al.*

DECIDED JUNE 17, 1933.    REHEARING DENIED JULY 7, 1933.

*Welborn B. Cody, A. A. Marshall,* for plaintiff.

*Homer C. Denton, W. Owen Slate, McDaniel, Neely & Marshall, Harry L. Greene,* for defendants.

GUERRY, J.   L. D. Belle Isle was killed in an accident on April 6, 1932.   Two women, each claiming to be his wife, filed separate claims with the industrial commission, alleging that he was in the employment of Barge-Thompson Company, and that they were entitled to compensation under the provisions of the workmen's compensation act.   The employer and the insurance carrier admitted liability, and offered to pay whichever claimant the commission should determine was entitled thereto.   It was shown that L. D. Belle Isle entered into a formal marriage with Eunice Fox Belle Isle, the first wife, in 1895, and that they lived together as man and wife until 1914.   There are two living children the issue of such marriage.   It was also shown that a separation occurred between L. D. Belle Isle and Eunice Fox Belle Isle, by reason of cruel and inhuman treatment of her on his part.   She left Atlanta and went to New York, where her people resided, and stayed there until 1917, at which time she returned to Atlanta, and she has been liv-

ing in Atlanta since that time. L. D. Belle Isle visited her in New York, but she did not live with him as his wife, and he came to see her in 1917 after she returned to Atlanta. It appears also, from the findings of the commissioner, that L. D. Belle Isle had been living in Atlanta, with short exceptions, from the time of the separation in 1914 until June, 1924, when the alleged marriage to Blanche Belle Isle, the second wife, took place in Birmingham, Alabama. It appears that Mrs. Eunice Fox Belle had never been divorced, nor had any proceedings for divorce been served on her, nor had any proceedings for divorce between her and L. D. Belle Isle ever been filed in Fulton county. It appears further that Blanche Belle Isle had known L. D. Belle Isle since 1919, she too being a resident of Atlanta, and that she knew of the existence of Eunice Fox Belle Isle and the children. She testified that L. D. Belle Isle told her, before her alleged marriage to him, that he had a divorce from Eunice Fox Belle Isle. She made no investigation or inquiry to determine the truth of this statement, nor did she make any inquiry as to how, when, or where such alleged divorce took place. She testified further that upon the receipt of a telegram from L. D. Belle Isle she met him in Birmingham, Ala., on June 22, 1924, and in company with a man named Zackary, she went to a house in Birmingham and was married by a "notary public." She made no investigation before or since to see whether there was any license or record of such marriage in Birmingham, Alabama, and no other witnesses were present or produced. It was shown that she and L. D. Belle Isle had been living together since that time as husband and wife, and had been accepted as such by the family of L. D. Belle Isle, although there was testimony from members of the family that they had heard it "both ways,"—that is, that L. D. Belle Isle and Blanche Belle Isle were married, and that they were not married. On a hearing before the sole commissioner a finding and award was made in favor of the first wife, Eunice Fox Belle Isle, and against Blanche Belle Isle, the second wife. Blanche Belle Isle appealed to the full commission; and the full commission, on the same testimony, found in favor of Blanche Belle Isle and set aside the finding in favor of Eunice Fox Bell Isle. The superior-court judge sustained the finding of the full commission, on an appeal taken by Eunice Fox Belle Isle, and exceptions taken to this order brought the case to this court for review.

It is earnestly insisted by counsel for the plaintiff in error that this is not a contest between two alleged wives, but that each claim is a separate and distinct proceeding against the employer, the Barge-Thompson Company; and that inasmuch as the sole commissioner found in favor of Eunice Fox Belle Isle, and as the employer did not appeal, the award was final, and that the order of the full commission on the appeal of Blanche Belle Isle, setting aside the award in favor of Eunice Fox Belle Isle, was without effect. It is insisted that the opinion rendered by Judge Bell, in the case of *Maxwell* v. *Atlantic Bitulithic Co.*, 40 *Ga. App.* 483, is authority for this position, as well as the decision rendered in the case of *Neely* v. *Tenn. &c. Ry. Co.*, 145 *Ga.* 363 (89 S. E. 325). It will be noted that in the *Maxwell* case, supra, Judge Bell expressly stated that he was not passing on conflicts between marriages, for the reason that such a position and contention had not been raised in the court below. A great many of the cases involving contests between two marriages have been decided by reason of the fact that the attacking party must carry the burden of proof. In the case at bar it can not be said that either party is the attacking party, and therefore neither party is placed under the disadvantage of having to carry the burden of proof. Both are claimants. The success of the one means the defeat of the other, but not to the extent of giving to the one the advantage of having the burden in her favor.

In the case of *Clark* v. *Cassidy*, 62 *Ga.* 407 (4), it was said: "When a marriage has been proved, the relation is presumed to exist until evidence of its dissolution, by death or divorce, and the party asserting the dissolution must prove it. Knowledge of the former marriage by the innocent party to the second marriage is not requisite to render void the second marriage." This principle was followed in *Irving* v. *Irving*, 152 *Ga.* 174 (108 S. E. 540), and in *Brown* v. *Parks*, 169 *Ga.* 712 (8) (151 S. E. 340, 71 A. L. R. 271). The decision in *Murchison* v. *Green*, 128 *Ga.* 339 (57 S. E. 709, 11 L. R. A. (N. S.) 702), is authority for the holding by Chief Judge Broyles in *Ward* v. *Ward*, 24 *Ga. App.* 695 (102 S. E. 35): "Where the second marriage by a person is established and it is shown that he or she had previously married another person who was living at the time of the second marriage, the presumption is that the first marriage had been dissolved by a decree of

divorce, and the burden is on the person attacking the validity of the second marriage to show that a divorce had not been granted." Judge Cobb, in *Murchison* v. *Green,* supra, said that the reason for this presumption in favor of the second marriage is that "marriage is favored by the law, concubinage is odious. When a man and woman are living together as man and wife the law will hold them to be such as against strong probabilities that they are not. . . The burden is upon him who attacks the validity of the marriage to show that it is invalid by clear, distinct, positive, and satisfactory proof. This is true because the status of the woman is involved and the legitimacy of children, and every presumption must be indulged that will relieve the woman from the charge of being a concubine and her children being bastards." It may readily be seen, therefore, that the party who has to assume the burden is placed at a serious disadvantage. Under the facts in both the *Ward* case, supra, and the *Murchison* case, supra, the contests arose where an estate was involved and third persons were attempting to set aside administrations, alleging that the marriage of the deceased to his wife was void because one or the other had a living wife or husband at the time of the ceremonial marriage to the deceased.

It can readily be seen that the rule laid down in such cases is founded in reason and justice, and is demanded by every dictate of justice and humanity. The facts in the cases cited above would also go to show either the ignorance of the alleged former marriage by the innocent contracting party or the existence of a valid divorce. It will be found, on a reference to authorities in other States (see 16 L. R. A. (N. S.) 98-110), that these presumptions were indulged in cases involving rights of inheritance, or in contests between a widow and an insurance company, or at the instance of others who were asserting a former marriage, the burden in each case being on the attacking party to show there had been no divorce. In the *Neely* case, supra, which was an action by the first wife against the railway company for the death of her husband, the railroad company defended upon the ground that a second wife (the marriage to the first wife having taken place in Tennessee, and being prior to the marriage to the second wife, which had taken place in Alabama) had brought an action against them also, and that a compromise verdict and settlement had already been made with such second wife. The first wife introduced evi-

dence that her husband had deserted her without cause, that she had not heard from him in seven or eight years, and had herself married another man, although she had never obtained a divorce from her first husband, and had never been served with any divorce proceedings by him. Judge Hill in that case drew attention to the fact that it was not a case in which there was a controversy between two wives with respect to legitimacy or inheritance, but that the railroad company sought to destroy a prima facie case made by the plaintiff as to her status as a widow. He said further: "If any presumption of innocence arose in such a case, it would not be sufficient to authorize a declaration as a matter of law, under the evidence above mentioned, that the first marriage had been dissolved. If the burden were upon the first wife to show that her wandering husband had not in any possible jurisdiction obtained a divorce by substituted service, she would carry practically an impossible burden; and the man would be almost immune from prosecutions for bigamy if he would travel extensively and marry a sufficient number of women with a presumption each time that he had obtained a divorce." Quoting further: "It may be remarked that presumptions of the dissolution of marriage and the like, based upon presumptions of innocence, have their use, but are not arbitrary rules of law to be applied in cases where the facts show them to be inapplicable." In *Brown* v. *Parks,* supra, Beck, P. J., said: "Where a woman was married to a man and the marriage was never legally dissolved and she survived him, she was entitled, upon his death, to assert the rights of a wife in property left by the deceased husband, even though she had separated from him and had been married to another man; for the last marriage was void and the status of the woman as the wife of the decedent was not destroyed." That case was again before the Supreme Court (173 *Ga.* 228, 160 S. E. 238), the court then holding that the first wife did not sufficiently establish the fact that she had ever been married to the deceased husband, and it was also shown that she had been married to more than one man since her alleged marriage to the deceased and had in fact collected insurance on the lives of such subsequent husbands, and, the fact of the original marriage not having been clearly shown, the jury found against the first wife and the verdict should be upheld.

In the present case a valid first marriage was established and

admitted. A legal presumption as to its continuance arose. See *Clark* v. *Cassidy,* supra, and *Wilson* v. *Allen,* 108 *Ga.* 275 (33 S. E. 975). A continuous residence by the first husband, except for temporary absences, is shown in the same county during the entire period from his first marriage until his alleged second marriage. A continuous residence by the first wife is shown to be in the same place except a three-year period. The knowledge of the alleged second wife of the fact of the first marriage and of the continuance of the life of the first wife is shown. The only evidence as to any divorce is that the husband stated that he had a divorce, the record being silent as to the time, place, and circumstances of such a divorce or dissolution of the first marriage. This evidence was objected to on the ground that it was hearsay and that there was higher and better evidence of the existence of such fact, if it existed. In the *Irving* case, supra, Beck, P. J., said: "A mere marriage ceremony between a man and a woman where one of them has a living husband or wife is not a marriage at all; it is a mere empty ceremony and effects nothing and creates no status between the parties. Such a marriage is an absolute nullity and may be treated so by the parties to such a ceremony and by all the world. . . it is void, not voidable." See the authorities cited thereunder. In the *Wilson* case, supra, it was held: "The proceedings of courts of record are to be ascertained from the minutes kept by the clerks thereof, signed and approved by the judge. Parol evidence is therefore inadmissible to establish that a certain decree was rendered, when collaterally in question in the court of its rendition; much more so in another and different tribunal." Quoting further: "Divorce proceedings are matters of court record. There can be no suit, nor verdict, nor decree that is not required to be placed on the records of the court where the suit is brought." It was affirmatively shown in this case that no proceedings for divorce between the deceased and his first wife were ever filed in Fulton county, and that no divorce proceeding was ever served on the first wife.

It becomes pertinent to inquire whether a woman who has knowledge that a man has a living wife may enter into a marriage ceremony with him and cohabit with him without making any investigation as to whether such prior marriage has been dissolved by divorce, and then rely solely upon the legal presumption as to the divorce or dissolution of the first marriage, to prevent, overturn,

and discharge all rights of the first wife. The purported statements of the husband to the effect that he had been divorced were not competent to prove a dissolution of the first marriage. In the case of *Grand Lodge Knights of Pythias* v. *Barnard, 9 Ga. App.* 71 (70 S. E. 678), it was said: "While the testimony of a person that another was his or her wife or husband, as the case may be, is competent, and sufficient to establish the marriage where there is no conflict of marriages (*Southern Ry. Co.* v. *Brown,* 126 *Ga.* 1, 54 S. E. 911; *Sellers* v. *Page,* 127 *Ga.* 633, 56 S. E. 101), still, where the issue on trial involves a competition between marriages, and one of the alleged wives shows a valid formal marriage in fact to an alleged deceased husband, and as to the other alleged wife there is no testimony except a general statement that she was married to him at a time previous to the date on which the marriage in fact with the other alleged wife took place, the testimony is insufficient to invalidate the formal marriage. *Norman* v. *Goode,* 113 *Ga.* 121 (38 S. E. 317)." In *Norman* v. *Goode,* supra, it was said: "The presumption of law, founded on cohabitation and repute, that a marriage had taken place, will not prevail over proof of a subsequent marriage in fact by one of the parties with a third person." In that case the parties proved an actual formal marriage to Norman. The court said that the testimony of Norman that he had married another woman previous to this actual marriage and had lived with her as his wife, nothing being testified as to the circumstances under which such marriage took place, who was present, what was the character of the ceremony, who officiated, etc., was not evidence that he was married according to any formality to such woman. A statement by Belle Isle in the present case that he was divorced is not competent to show that any divorce had taken place. Chief Justice Bleckley in *Jenkins* v. *Jenkins,* 83 *Ga.* 283 (9 S. E. 541, 19 Am. St. R. 316), said: "The true doctrine of the authorities is, that where two alleged marriages compete, and one of them is proved as a fact, whether by direct or circumstantial evidence, the other can not be left to stand upon the mere legal presumption founded on cohabitation and repute. . . But this presumption the law declines to raise in opposition to a competing marriage actually proved."

The marriage of L. D. Belle Isle to Eunice Fox Belle Isle is not disputed. The only testimony as to his marriage to Blanche Belle

Isle was her testimony that she lived in Atlanta and received a telegram from L. D. Belle Isle, who was temporarily working in Birmingham, to come to Birmingham, and that she was met by Belle Isle and a man named Zackary, whom she has not seen since, and they went to a house of a notary public, whose name she does not know, and that he married them, that there were no witnesses to the ceremony except Zackary, and that she made no effort to locate the record of her marriage in Birmingham, that she knew four years prior to her alleged marriage that the first Mrs. Belle Isle was living in Atlanta, and that she never looked up any records to see whether any divorce had been granted,—"just took his word." In order for Mrs. Blanche Belle Isle to have the advantage of the legal presumption, which arises in favor of a second marriage, that the first marriage has been dissolved, it must clearly and affirmatively appear that there was in fact a valid formal second marriage, and a mere general statement to this effect is insufficient, under the principle laid down in the *Barnard* case, supra. Under the decisions in the *Jenkins* case and the *Norman* case, supra, no such presumption will arise in favor of a marriage founded on cohabitation and repute. The evidence in this case showing a valid first marriage, there being no evidence as to a dissolution of this marriage and there being only a general statement as to the second marriage, without producing any license or record thereof or witness thereto, and cohabitation and repute being also relied on, it is insufficient to establish the alleged second marriage. The court therefore erred in sustaining the finding of the industrial commission which set aside the award of the sole commissioner.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*