RENFROE *et al. v.* HAMILTON *et al.*

No. 13928.   NOVEMBER 13, 1941.

*R. S. & C. W. Foy,* for plaintiffs.
*J. R. Lunsford,* for defendants.

GRICE, Justice. This suit by the brother and sisters of J. G. Hamilton on his certificate of insurance in the Woodmen of the World, a fraternal benefit society, was brought against said society and Mrs. Pennington. The plaintiffs alleged, that at the time of his death Hamilton had said certificate; that the certificate named Hamilton's former wife as the beneficiary; that she died several years before he died; that a very few days before his death he married Mrs. Pennington, one of the defendants; that Hamilton was stricken with paralysis about two weeks before his death; and that when he married Mrs. Pennington he was mentally incapable of contracting marriage. The prayers were that the Woodmen of the World be restrained from paying the proceeds of the certificate to the second wife; that she be restrained from receiving the money from the certificate; that her marriage to Hamilton be declared null and void for lack of mental capacity on the part of Hamilton to contract marriage; and that the money due on the certificate be declared due and payable to the plaintiffs, next of kin of Hamilton.

The defendant named as Mrs. G. B. Pennington answered, that she had been misnamed by the plaintiffs, that her name was Mrs. Pearl Pennington Hamilton, for that she married J. G. Hamilton before his death. She denied that Hamilton was mentally incapable of contracting the marriage, and she claimed that she was the proper beneficiary of the insurance certificate.

Woodmen of the World answered, admitting liability to the proper beneficiary or beneficiaries, and praying that it be allowed to pay the money into the registry of the court and be discharged. It was so done and ordered, and the case proceeded solely as between the parties claiming the beneficial interest under the certificate. The jury rendered a verdict in favor of Mrs. Hamilton, and the court entered judgment to the effect that her marriage to Hamilton was a valid and binding contract, and that she was his lawful heir. The plaintiffs' motion for new trial was overruled, and they excepted.

The brief of counsel for the plaintiffs contains a statement that it is not contended that the verdict is without any evidence to support it, and that the general grounds are not insisted on. It is the contention of counsel for the defendant that although there was evidence pro and con as to Hamilton's mental condition on days other than the one on which the marriage took place, there is noth-

ing to show lack of mental capacity at the time of the marriage ceremony. Compare *Brown* v. *Kendrick,* 163 *Ga.* 149, 169 (135 S. E. 721) ; *Hill* v. *Deal,* 185 *Ga.* 42, 46 (193 S. E. 858). If this position be maintainable, the judgment denying the new trial should be affirmed, regardless of any errors in the charge. Viewing the evidence as a whole, it can not be said, however, that the verdict was demanded. Although when mental capacity or lack of it is the issue, that question must be determined by the condition of the mind at the time of the ceremony, evidence as to what that condition was at a previous or subsequent time, not too remote, may be considered by the jury as shedding light on what must have been the mental condition at the time of the marriage ceremony, and to justify them in reaching a conclusion at variance with the opinion of some or all of the witnesses who were present on the occasion of the marriage. Compare *Terry* v. *Buffington,* 11 *Ga.* 337 (56 Am. D. 423) ; *Bridges* v. *Donalson,* 165 *Ga.* 228, 232 (140 S. E. 497). In the latter case it was said : "In order to ascertain the grantor's mental condition at the time he executes a deed, it is permissible to receive evidence of the condition of his mind for a reasonable period both before and after that time ;" citing *Terry* v. *Buffington,* supra, and *Adams* v. *Cooper,* 148 *Ga.* 339 (96 S. E. 858). In 32 C. J. 760, § 564, 4, it is said : "In all cases the question to decide has reference to the mental condition of the person whose sanity is in issue, at the very time of doing the act which is the subject of judicial investigation. But in order to ascertain a person's mental condition at the time of the act in question, it is permissible to receive evidence of the condition of his mind for a reasonable period both before and after that time, subject to a proper restriction as to remoteness." See *Ellis* v. *Britt,* 181 *Ga.* 442, 444 (182 S. E. 596) ; *Thompson* v. *Mitchell,* 192 *Ga.* 750 (16 S. E. 2d, 540).

Since under the evidence the jury would have been authorized to find either for or against the complainants, the criticisms as to the charge must be examined to determine whether or not they afford ground for the grant of a new trial.

There was under the pleadings but one question for the jury to pass upon, to wit, the mental capacity of Hamilton to contract marriage. All the testimony was directed to that issue only. Eighteen witnesses were sworn for the plaintiffs, they admitting

that a ceremonial marriage had taken place. *Hamilton* v. *Bell,* 161 *Ga.* 739, 741 (132 S. E. 83). The evidence was in conflict. The question as to where the preponderance of the evidence lay it was the duty of the jury to solve. On that subject the judge charged the jury as follows: "In determining where the preponderance of evidence lies, the jury may look to the manner of the witnesses as they appeared and testified, consider the nature of the facts with relation to which they testified, or the lack of such opportunity, their intelligence, their interest in the case or lack of such interest, their prejudice or bias, if any appears. From all these, gentlemen of the jury, determine for yourselves where lies the preponderance of the evidence." It has a number of times been ruled by this court and the Court of Appeals that when the trial court undertakes to state to the jury the principles of the Code, § 38-107, as to how the preponderance of evidence should be determined, it is his duty to instruct the jury fully and completely with respect thereto, so far as relevant to the case on trial, and that omission to do so is erroneous. *Rouse* v. *State,* 2 *Ga. App.* 184 (7) (58 S. E. 416); *Hinson* v. *Hooks,* 27 *Ga. App.* 430 (108 S. E. 822); *Gossett* v. *Wilder,* 46 *Ga. App.* 651 (168 S. E. 903); *Shankle* v. *Crowder,* 174 *Ga.* 399 (8), 411 (163 S. E. 180); *Tucker* v. *Talmadge,* 186 *Ga.* 798 (198 S. E. 726). In the charge now under consideration, the judge failed to instruct the jury that they might also consider: (a) All the facts and circumstances of the case. (b) The probability or improbability of the witnesses' testimony. (c) The personal credibility of the witnesses, so far as the same may legitimately appear from the trial. (d) The witnesses' means and opportunity for knowing the facts to which they testified. (e) The jury may also consider the number of witnesses, though the preponderance is not necessarily with the greater number. The judge in this respect committed error.

There was evidence to show that Hamilton suffered a severe stroke of paralysis on July 31, 1940; that thereafter there was no control of his bowel movement; that he lay in bed practically helpless; that he was married on August 10, 1940, and died four days thereafter; that although his nearest kin visited him during his last illness—his sister four or five times before the ceremony was performed, it does not appear that any of them were informed that he contemplated getting married, or that thereafter he caused

any of them to be notified of it; that theretofore the other party to the marriage heard the attending physician "advise his people, if he had any relatives that he wanted to see, to send for them." These were matters that the jury might have deemed sufficient, together with other testimony, to satisfy them that he was physically unfit to perform the obligations which the contract of marriage imposes, and that the fact that he did, in that condition, enter into a ceremonial marriage in the circumstances, was itself some evidence that at that particular time he was mentally unsound, regardless of the opinion testified to by some of the witnesses. The marriage may have been the act on his part of a man of sound mind, and a natural culmination of a love affair of at least several months duration. We are here merely ruling that under the proofs submitted, and all reasonable deductions to be drawn therefrom, the jury were not compelled as a matter of law to have so found.

■ Complaint is made of the following extract from the charge of the court: "I charge you, gentlemen, in connection with what I have just charged you, that the law is more regardful of nuptial—that is marriage—the word nuptial means marriage—than of ordinary contracts, and persons incapable of contracting generally may contract marriage." We are of the opinion that this charge should not have been given. This is a contest over property rights between the next of kin of a man, and a woman claiming to be his widow, when the sole issue is as to the validity of a ceremonial marriage, which is attacked on the ground that at the time the ceremony was performed he was of unsound mind and mentally incapable of contracting marriage. This record does not present a case where a man was twice married and the children of the first marriage were claiming the whole estate and contending that the second marriage was void and the issue thereof were bastards for the reason that the man had been divorced from his first wife, on account of whose guilty conduct the divorce was obtained, which under the then existing law prohibited his remarriage. Such an instance was that dealt with in *Park* v. *Barron*, 20 *Ga.* 702 (65 Am. D. 641), decided at the November term, 1856. The holding there was that since the law did not declare the latter act void, since unlawful marriages are not void unless declared so to be, and no criminal prosecution having been instituted against the parties in

their lifetime, the issues are not bastardized. The statement there made that the law is more regardful of nuptial than of ordinary contracts, and that persons incapable of contracting generally may contract marriage, was, as shown in division 2 of the opinion, based on the rule which obtained at common law, that marriage contracts were excepted from the rules which govern ordinary contracts, even to the extent that an idiot or a lunatic might contract marriage; and arguing from this premise the court held that though the husband there was not an idiot, he was nevertheless a person prohibited from marrying, under a penalty, and should therefore be classed, according to the analogies of the English law, with marriages that are voidable and not void. The language referred to, even if it stated a sound proposition of law, did not deal, except in a remote degree, if at all, with the matter involved in the issue before the court in *Park* v. *Barron,* and can not be approved as an applicable instruction in a case such as that here presented.

Grounds 3 and 4 are based on the following excerpts from the judge's charge: "I also charge you, gentlemen, that marriage in this State is favored by the law. Concubinage is odious,—that is, a man living with a woman commonly known as his woman and not his wife. When a man and woman are living together as husband and wife, the law will hold them as such even against strong probabilities that they are not." The opinion of this court in *Murchison* v. *Green,* 128 *Ga.* 339, 341 (57 S. E. 709, 11 L. R. A. (N. S.) 702), begins as follows: "Marriage is favored by the law; concubinage is odious. When a man and a woman are living together as husband and wife, the law will hold them to be such, even against strong probabilities that they are not." The first sentence of the quoted words contains a statement backed by the authority of the Scripture as well as by the writings of many sages of the law. The latter sentence may be equally as sound a principle, as indeed the courts have frequently so declared it. It does not follow, however, that it was proper so to have charged the jury. *Murchison* v. *Green,* supra, was a case where after the marriage under attack the contracting parties lived together as man and wife for some years. The sole ground of attack was that at the time of the marriage the woman had a living husband. This contention was denied, and this court in the opinion said that the

evidence was of such a character as to support a verdict either way. In that case the man and the woman were living together as husband and wife. It was her second marriage. If at the time of entering into it she had a living husband, the relationship following the second marriage was concubinage. That part of the opinion hereinbefore referred to related to that situation. In the instant case there was no living together as man and wife after the performance of the ceremony. It was a death-bed marriage. There were two apparently conflicting presumptions that arose in the *Murchison* case: one, the presumption of validity of a marriage arising from the performance of a ceremony; the other, the presumption of a continued life of a former spouse of one of the others; and the quoted portion of the charge in that case was merely used to demonstrate the correctness of the ruling that if neither presumption is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the second marriage will prevail over the presumption of the continuance of life of the former spouse. It was erroneous to give this charge in the instant case.

■ Complaint is made that the court charged the jury that "The burden is upon him or them who attack the marriage to show that it is invalid by clear, distinct, positive, and satisfactory proof;" and that he charged the jury that "The presumption as to the validity of the marriage can only be negatived by disproving every reasonable possibility." Both of the above are also taken from the opinion in *Murchison* v. *Green,* supra. The comments already made on that case will not be repeated. In support of the statement just above made, Mr. Justice Cobb cited only Megginson *v.* Megginson, 21 Oregon, 387 (28 Pac. 388, 14 L. R. A. 540). That decision dealt with the attack on the legality of a marriage only because of the claim that the ceremony was performed by a person assuming to act as a minister of the gospel, when in fact he was not such. The proof showed that he was a devoutly religious man, who sometimes preached, and was generally known as a preacher. After the marriage there was cohabitation, under the belief of the parties that they were lawfully married, and children were born to the couple. The notes to the reported case go no further than to collect many cases which dealt with the presumptions that flow from a marriage ceremony, and the opinion

in the Oregon case did not declare that the burden is on one who attacks such marriage as invalid to show by clear, distinct, positive, and satisfactory proof its invalidity, except in instances where there has been a former marriage by a person assuming to act in the capacity of a minister of the gospel, followed by cohabitation under a belief that they were legally married. Immediately after the sentence in the *Murchison* case that the presumption as to the validity of the marriage can only be negatived by disproving every reasonable possibility, this was said: "The status of the woman is involved, as well as the legitimacy of children, and every reasonable presumption must be indulged which will relieve the woman of the charge of being a concubine and her children from being declared bastards."

Whether or not the statements above referred to from the opinion in the *Murchison* case were obiter, or, if obiter, whether sound or not, we need not decide, since, under the record in the instant case, the sole question before the jury was as to the mental capacity of Hamilton to contract the marriage; and in our judgment there is nothing to take the case out of the general rule that in a civil case the plaintiff has only the burden of establishing his case by a preponderance of the evidence. Code, § 38-106. In *Medlock* v. *Merritt*, 102 *Ga.* 212 (29 S. E. 185), it was held that the next of kin of a deceased woman, claiming to be her heirs at law upon the theory that she died unmarried, may, whenever in a legal proceeding it becomes essential to the assertion of their rights, attack as void an alleged marriage between the deceased and another person, on the ground that at the time the marriage ceremony was performed she was of unsound mind and mentally incapable of contracting marriage. Nothing was there said, or in any other case from this court directly in point, as to the degree of proof necessary in a case of this character, other than that defined in the Code section above cited. The general rule seems to be that in deciding such an issue the same tests are to be applied as when the validity of other contracts are attacked on that ground, and no higher degree of proof required in the one than in the other. 1 Bishop on Marriage, Divorce, etc., § 595; 1 Schouler on Marriage, etc., § 18; 35 Am. Jur. § 113.

On account of the errors in the instructions to the jury, the motion for new trial should have been sustained.

*Judgment reversed. All the Justices concur.*