# MATILDA HARRIS

## v.

# HILLIARD HARRIS.

1. STATEMENT.—This was a bill filed by appellee against the appellant in July, 1878, for a divorce, on the ground that at the time of the marriage in September, 1876, with her, she had another husband living, to whom she was married in December, 1863. The first husband had not been heard of since 1867.

2. DIVORCE—SECOND MARRIAGE—PRESUMPTION AS TO LEGALITY OF, AND DEATH OF FIRST HUSBAND.—When it is shown that a marriage has been consummated in accordance with the forms of law it is to be presumed that no legal impediments existed to the parties entering into matrimonial relations, and the fact if shown that either or both of the parties have been previously married and at a former time had a wife or husband living does not destroy the *prima facie* legality of the last marriage.

3. SECOND MARRIAGE—PRESUMPTION—BURDEN OF PROOF.—The presumption in such case is that the former marriage has been legally dissolved and the burden of showing that it has not, rests upon the party seeking to impeach the last marriage. The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved either by the death of their former consort or by a decree of court, in order to protect themselves against a bill for a divorce or a prosecution for bigamy, especially after such a lapse of time as occurred in this case.

4. THE PRESUMPTION OF LEGALITY OF THE SECOND MARRIAGE GREATER THAN THAT OF THE CONTINUANCE OF LIFE.—That after a lapse of time, less than nine years even, the law treats the presumption of the legality of the second marriage as overcoming that of the continuance of life, and requires that direct proof should be made that the former husband or wife was living at the date of the second marriage.

APPEAL from the Circuit Court of Peoria county; the Hon. M. N. LAWS, Judge, presiding. Opinion filed April 6, 1881.

Messrs. CRATTY BROS. & ULRICH, for appellant; admissions as well as confessions are but weak evidence, and should be received with caution: Bergen v. the People 17 Ill. 426; Ray v. Bell, 24 Ill. 444; Straubher v. Mohler, 80 Ill. 21.

The charge alleged as the ground for a divorce must be clearly proven: Bercksman v. Bercksman, 1; E. C. Greene, (N. J.) 122 and 453.

Where the fact of a marriage becomes a material issue, it

must be proven to have been a legal marriage: Myatt v. Myatt, 44 Ill. 473; The State v. Roswell, 6 Conn. 446.

Cohabitation and reputation are not marriage. They are but circumstances from which marriage may be presumed: Yardley's Estate, 25 P. F. S. 207.

The presumption of marriage arising from such facts may always be rebutted, and disappears upon proof that no marriage in fact had taken place: Senser v. Bower, 1 Penn. 452; Heffner v. Heffner, 11 H. 104; Kenly v. Kenly, 2 Yeates, 207,

That absence for the space of seven years raises the presumption of death, which continues for all time or until the absent one is shown by proof to be alive: Squire v. The State, 46 Ind. 459; Spear v. Burton, 31 Miss. 555; Sharp v. Johnson, 22 Ark. 79; Lockhart v. White, 18 Texas, 102; Town of Greensboro v. Town of Underhill, 12 Ver. 604: Rex v. Gloucestershire, 2 Barn. & Ald. 386; The King v. Inhabitants of Twyning, 2 B. & Ald. 386; 1 Greenleaf on Evidence, Sec. 35; Whiting v. Nicholl, 46 Ill. 230; Ringhouse v. Keever, 49 Ill. 470.

Common reputation and belief, in the family and among relations of the death of a party is competent evidence of the fact: 1 Starkie on Evidence, 158-159. (5th. Am. Ed:) 2 Ib. 605; Spear v. Burton, 31 Miss. 555.

The common law doctrine proceeds upon the idea of a contract between the parties: Hibblethwaite v. Hepworth, 13 Chicago Legal News, 19; Port v. Port, 70 Ill. 484.

If Lowry had a wife living at the time he married appellant, then her marriage with him was void, and she could legally contract a marriage with appellee: Gaines v. Relf, 12 How. 472; Gaines v. Hennen, 24 How, 554; Carre v. Carre, 2 Yeates, 207; 2 Kent's Com. 79; Bishop on Mar. and Div. 205; Clark v. Lott, 11 Ill. 105; Revised Statutes, Chap. 40 Sec. 3.

Messrs. COOPER & TENNERY, for appellee; that there was a good common law marriage between Lowry and appellant, cited Crouch v. Hall, 15 Ill. 263; Tinkler v. Cox, 68 Ill. 119; Port v. Port, 70 Ill. 484; 2 Kent's Com. 86, 78; Bishop on Marriage and Divorce, Sec. 359; 2 Stark. on Evidence, 365.

Harris v. Harris.

PILLSBURY, J.   This was a bill filed, by the appellee against the appellant, on the 30th day of July, 1878, for a divorce, on the ground that at the time of his marriage, Sept. 19th, 1876, with her, she had another husband living, one Hezekiah T. Lowry, to whom she was married in December, 1863.

Appellant, in her answer, admits the marriage to the appellee, as stated in the bill, and as to the alleged marriage with said Lowry, she says that a marriage ceremony was performed between them at Columbus, Ohio, in December, 1863, which she supposed at the time to be valid, but after living with him as his wife for about two years, she learned he had another wife living, and she then ceased longer to live with him.

She further alleges that said Lowry died in 1867, as she was informed and verily believed, and has never since that time known or heard of his being alive, and denies the allegation of the bill that he was alive at the time of her marriage to appellee, in Sept. 1876.

The cause was submitted to a jury, who, under the instructions of the court, returned a verdict for the complainant below, and a decree was entered thereon by the court, declaring the marriage void, and the defendant appealed.

The evidence of the complainant introduced upon the trial below, tended to prove that a marriage between the defendant and said Lowry was solemnized in 1863, at Columbus, Ohio, under a license issued in Indiana, and that the defendant had admitted to various persons that she had been married to Lowry, and that she had heard from him not long before such admissions were made.   There is no proof in the record that said Lowry has been seen by any one since 1867.   The defendant denied in her testimony that she ever made any statement that she knew or had reason to suppose that said Lowry was living in 1876.   She further says that she was married to Lowry, as she at the time supposed lawfully, in 1863, at Columbus, and after such marriage lived with him as his wife until the fall of 1864, when he enlisted in the army; that he returned in Oct. 1865, to his home in Harrisburg, Pa., and she lived with him there for about two months, when she was told that he had another wife, then in the town; that she saw

the woman who claimed to be his wife, and then told Lowry, " If this woman was his wife to say so, and take her away; if not, to stay at home;" that he said nothing, but laughed, and went away. That she saw Lowry once after he left, in Philadelphia, in 1867, since which time she has never seen him or heard of his being alive, but did hear, in 1868, when she was in Philadelphia, inquiring for him, that he was dead; and that she learned the same thing when there again in 1871; that at the time of her marriage to the appellee she believed Lowry to be dead, and at the time of trial still so believed.

Her daughter Ada, who was sworn as a witness, corroborates the appellant in her statements regarding the seeing of Lowry in 1867, and the rumors of his death in 1868. The appellant contends that the proof is insufficient to show that she was ever legally married to Lowry, as the license issued in Indiana under its laws was no authority for the witness Graham to perform the marriage ceremony in the State of Ohio.

However this might be, if it had been shown that the statute of the State of Ohio declared all marriages in that State void unless solemnized in accordance with its provisions, we are of the opinion that in the absence of such proof the evidence in this case established a valid marriage at common law.

Statutory provisions authorizing marriages to be solemnized according to certain prescribed forms, are considered as directory, and not construed as prohibiting the contracting of the matrimonial relation by words of present assent, in the absence of a positive declaration in the statute to that effect.

It is urged also that her marriage with Lowry was void, as he had a wife then living, therefore she had a right to marry again, and in this view the sixth instruction given for the appellee is erroneous. This instruction in substance states that even if Lowry had another wife living, yet so far as this case is concerned, the marriage must be held valid and binding, unless it be shown that Lowry was dead at the time of her marriage with the appellee.

The evidence in the case that Lowry at the time he married the appellant had another wife living, is so very slight that we cannot believe the jury were misled by the instruction

upon this point.    In this regard it worked no injury to the appellant, although the court perhaps would have been justified in refusing it under the authority of § 205, Bishop on Marriage and Divorce; Patterson v. Gaines, 6 How. U. S. 550; and Reeves v. Reeves, 54 Ill. 332.

The principal question in the case, as appears to us, is whether at the time of the marriage between the parties to this cause the said Lowry was still living, and upon this point we are not satisfied that under all the circumstances of the case the proof was such as to justify the jury in finding that issue in favor of the appellee.

Some of the witnesses for the appellee, it is true, state that the appellant told them she had been formerly married, and that her husband was alive; but, even if she made such statements, which she denies, the whole record considered, it is evident she had no knowledge or information respecting the fact; and while such admissions were competent for the consideration of the jury, they are of such a character when viewed in the light of all the testimony, as to entitle them to but little if any weight in the decision of the question.

Indeed, it is not seriously claimed by counsel for the appellee there is any sufficient proof that said Lowry was in fact living on the 19th day of Sept., 1876, but they, to prove such fact, rely mainly upon the presumption of the continuance of life, the argument being that he being seen alive in 1867; the presumption must be that his life continued down to the time of the marriage in 1876, unless the appellant should show that he had not been heard of for more than seven years prior to that time.    It is insisted that, as the evidence shows that Lowry was alive nine years before the parties hereto were married, the burden is cast upon the appellant to prove his death in fact, or to show such circumstances as will raise the counter presumption of his death.  This view of the law was indorsed by the court below, and embodied in the fifth, ninth and eleventh instructions given to the jury at the request of the appellee. The eleventh instruction is as follows:

11.    "The jury are further instructed that there is no sufficient proof before them of the actual death of Hezekiah F.

Lowry; that mere rumor or hearsay evidence is not sufficient to establish the fact of such death, and that the testimony of the defendant and her daughter, to the effect that some one or more persons told them in 1868, or about that time, that said Lowry had died in prison in Philadelphia, is not before them for the purpose of proving that Lowry was in fact dead at the time referred to; and if the jury shall believe from the evidence that said Lowry was living in the year 1867, and was then seen by the witness, Ada Anderson, the daughter of the defendant, in Philadelphia, the legal presumption is that he was still in full life on the 19th of September, 1876, when the defendant was married to the complainant, unless it has been satisfactorily proved that he had not been heard from or among his friends and associates, where he resided when last heard from for seven years prior to the date of the marriage of defendant with complainant; and unless it has been proved by a fair preponderance of all the evidence in the case, that said Lowry has not been heard from by or among his friends and associates at his usual place of resort, for seven years prior to the date of the marriage of defendant with complainant, the jury should find that said Lowry was still living at the date of said marriage."

We are of the opinion that, under the circumstances shown by the evidence in this case, and assumed to exist by the instruction, that it should not have been given to the jury. The burden of proof in this case was upon the appellee to show by a preponderance of the evidence that Lowry was alive at the time of the second marriage, and we think this issue is not proven by simply showing that he was seen alive nine years before that time. The jury are in effect directed by this instruction to find that he was alive in 1876 from this fact alone, unless it was satisfactorily proved that he had not been heard from among his friends and associates for seven years prior to that time.

If this material fact is to be determined by the jury from presumptions that may naturally arise in the cause, the instruction should not have completely ignored the presumption that the last marriage, admitted to have been solemnized under all the forms of law, was a valid and legal one.

Harris v. Harris.

When it is shown that a marriage has been consummated in accordance with the forms of the law, it is to be presumed that no legal impediments existed to their entering into matrimonial relations, and the fact if shown, that either or both of the parties have been previously married, and, of course, at a former time having a wife or husband living, does not destroy the *prima facie* legality of the last marriage.

The natural inference in such case is, that the former marriage has been legally dissolved, and the burden of showing that it has not been, rests upon the party seeking to impeach the last marriage. The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved either by death of their former consort or by a decree of court, in order to protect themselves against a bill for a divorce or a prosecution for bigamy, especially after the lapse of such a length of time as occurred in this case after the party was last seen or known of by any witness testifying and the time of the second marriage. The authorities appear to be that after the lapse of such time, the law treats the presumption of the legality of the second marriage as overcoming that of the continuance of life, and requires that direct proof, should be made that the former husband or wife was living at the date of the second marriage.

In Dixon v. The People, 18 Mich. 84, the defendant was indicted for murder, and the prosecution desired to use Harriet Dixon, who claimed to be his wife, as a witness, and to show that she was not his wife, and therefore competent to testify, proved to the court that she was married in 1859 to one Phillips, in Livingston county, in that State. The wife was then called, and admitted her marriage to Phillips, but further stated that the last time she saw Phillips was in April, 1860, and had not heard of him since; that in 1862 she saw the account in a newspaper of the death of a man by the name of Phillips, who she supposed to be her husband; that she, believing him to be dead, married the defendant in March, 1865. Under this evidence she was allowed to testify, and the defendant excepted. Upon the point now under consideration, the Supreme Court say:

"This evidence made a very clear and strong *prima facie* case of a valid marriage in good faith with the defendant; since, without reference to the newspaper report, the presumption of innocence, that she would not commit the crime of bigamy by marrying the defendant while Phillips was alive, rendered it obligatory upon the court, in the absence of testimony to the contrary, conclusively to presume the death of Phillips and the validity of the marriage with the defendant."

In Hull v. Rawls, 27 Miss. 471, Mrs. Rawls filed her petition for dower, which was resisted by Hull, the administrator of James C. Rawls, deceased, on the ground that she was not the wife of Rawls, as he had a wife living at the time of his pretended marriage to the petitioner. The proof of the petitioner consisted of the record of her marriage made in the clerk's office of Kemper county, in that State, showing the marriage was solemnized December 6th, 1848. On the part of the administrator it was proved that in 1844, James C. Rawls was living in Chickasaw county with a woman whom he treated as his wife, and that the parties were recognized as husband and wife in the community, and that Rawls had said at one time in the presence of petitioner, that his former wife was then living in Georgia.

The court said: "Aside from the statement of Rawls, there is nothing in the testimony which raises a suspicion against the validity of the marriage. The fact that deceased was living in 1844, with a woman believed to be his wife, is no evidence that she was living on the 6th day of December, 1848. The marriage having been solemnized according to the forms of law, every presumption must be indulged in favor of its validity.

Where the parties appeared in Texas, as husband and wife four years after the husband's separation from a former wife, the court held that "the rational presumption after this lapse of time, is, that the former wife was dead. The ordinary presumption in favor of the continuance of human life, should not under the facts of the case, outweigh the presumption of the innocence of their cohabitation and that there was no legal impediment to their marriage." Yates v. Houston, 3 Texas, 433.

Harris v. Harris.

In Rex v. Twining, 2 B. & Al. 385—it was held, where a woman twelve months after her first husband was last heard of, married a second husband and had children by him, that the court below did right in presuming *prima facie* that the first husband was dead at the time of the second marriage; and that it was incumbent on the party objecting to the second marriage to give some proof that the first husband was then alive.

This case was, however, criticised by the court in Rex v. Horbome, 2 Al. & El. 540, where it was held the court did right in presuming that the first wife was alive at the time of the second marriage, as she was shown to be living twenty-five days prior to that date.    Besides, the cases above, we refer to Chapman v. Cooper, 5 Rich. 452, and Canady v. George, 6 Rich. 103, as sustaining the same view.

It is seen from these authorities that the courts have generally presumed in favor of the validity of the second marriage as against the presumption of the continuance of life, even in cases where the absence of the former husband or wife has been much less than seven years, and while we would not be understood as fixing any given time when the former presumption should be considered of greater weight than the latter, we are clear, from an examination of the authorities, that, in a case like this at bar, where nine years had elapsed from the time the first husband was last seen or heard of by any witness testifying in the cause, the law will not presume the continuance of his life to the time of the second marriage, but will require the complainant to introduce some direct evidence to prove the allegation of his bill that the former husband was alive at the date of the second marriage.

There being no sufficient evidence of this character to sustain the verdict, and as the instructions permitted the jury to find, Lowry was living at the time of the marriage between these parties from the presumption of the continuance of life alone, thereby changing the burden of proof from the appellant to the appellee, the decree of the court below will be reversed and the cause remanded.

Decree reversed.