IN RE APPEAL OF THERESA M. O'ROURKE FROM
AN ORDER OF THE
PROBATE COURT OF DAKOTA COUNTY.

246 N. W. 2d 461.

October 1, 1976—No. 44575.

*Rivard, Convery & Associates, Joseph H. Rivard,* and *David W. Nord,* for appellant.

*Hartke, Atkins & Montpetit, Joel A. Montpetit,* and *M. Eugene Atkins,* for respondent heirs.

*Grannis & Grannis* and *Larry Meuwissen,* for respondent administrator.

Heard before Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

Theresa O'Rourke appeals from a determination by the county court, affirmed by the district court, that she was not the surviving spouse of Leo O'Rourke because his earlier marriage to Kathleen Sharpe had never been terminated by divorce. We granted discretionary review to decide whether to recognize a presumption that the later of successive marriages is valid. In re Appeal of O'Rourke, 300 Minn. 158, 182, 220 N. W. 2d 811, 824.

On November 25, 1970, after two earlier marriages which both ended in divorce, Leo O'Rourke married Kathleen Sharpe in Iowa. On August 12, 1971, he married appellant, Theresa, in Minnesota. On December 1, 1971, he died, survived by Kathleen, Theresa, and six children from his first two marriages. Both Theresa and Kathleen petitioned to set aside the homestead and to receive the widow's maintenance pending settlement of Leo's estate. The county court denied both petitions, Theresa's because Kathleen was the surviving spouse and Kathleen's because she had waived her rights in an antenuptial agreement.

While not certain from the facts, it appears that Leo's marriage to Kathleen may have been a "limited purpose marriage" to facilitate her immigration from Canada. Theresa urges us to reverse the trial court's finding that this marriage was valid. However, since no Minnesota or Iowa statute declares a limited purpose marriage void ab initio, Kathleen's marriage was at most voidable. State v. Yoder, 113 Minn. 503, 103 N. W. 10

(1911). A voidable marriage may not be collaterally attacked. State ex rel. Scott v. Lowell, 78 Minn. 166, 80 N. W. 877 (1899). Therefore, the trial court properly found that Kathleen's marriage was valid.

The issue which we now consider is whether we should recognize a presumption that the later of successive marriages is valid. Most jurisdictions do recognize such a presumption. Clark, Law of Domestic Relations, § 2.7, p. 67; Annotation, 14 A. L. R. 2d 7; 52 Am. Jur. 2d, Marriage, § 140; 55 C. J. S., Marriage, § 43(c) (3), p. 893. The presumption favoring the later of successive marriages operates to vindicate expectations upon which the parties have arranged their lives and to protect the legitimacy of children. Thus, some courts have held that the strength of this presumption increases with the length of the later marriage and with the birth of children to the later spouse.

Some jurisdictions, however, also recognize a presumption favoring continuation of a prior marriage. See, Annotation, 14 A. L. R. 2d 7, 37. This presumption is said to be based on notions of probability and trial convenience. McCormick, Evidence (2nd ed.) § 345, p. 823. That is, the probability that the prior marriage continued and the convenience of not requiring a party to prove that there has been no divorce.

We have concluded that the courts of this state may consider both of these presumptions in deciding which of successive marriages is valid. In evaluating these conflicting presumptions, the court must look to the underlying policies intended to be served by the presumption and the extent to which those policies will actually be served under the facts of a particular case.

We acknowledge that some commentators have indicated that the presumption favoring the validity of the later marriage should always prevail over the conflicting presumption that the earlier marriage continues, because the social policies underlying the former are more significant than the policies of probability and convenience which underlie the latter. McCormick, Evidence (2nd ed.) p. 824; Morgan, *Some Observations Concerning Pre-*

*sumptions*, 44 Harv. L. Rev. 906, 932. See, also Rule 301(b), Uniform Rules of Evidence. But we think the better approach is to reserve discretion to weigh the various social policies in light of the facts of a particular case. As stated in Clark, Law of Domestic Relations, § 2.7, p. 70:

"The courts dealing with rebuttal of this presumption, [of validity of the later marriage] whatever theory they may ostensibly adopt, have an extremely wide area of discretion within which they may hold the presumption rebutted or not. In other words the real significance of the presumption is that it gives the courts the opportunity to weigh all the elements of the second spouse's claim in order to reach an equitable result without being hindered either by rule or precedent."

In the instant case Theresa was married to Leo less than 4 months prior to his death and bore him no children. Thus, the policy reasons for applying a presumption favoring Leo's later marriage to Theresa are so weak that we believe that the trial court could not have found in favor of this marriage even if it had known of the availability of the presumption. Accordingly, we affirm.

Affirmed.