MARY LOU RAINIER *v.* RICHARD SNIDER, ADMINISTRATOR OF THE ESTATE OF RUSSELL L. RAINIER

[No. 2-675A153. Filed November 22, 1977.]

*Daniel K. Houston*, of Lafayette, for appellant.

*John C. McLaughlin, Dellinger, Dellinger & McLaughlin*, of Monticello, for appellee.

SULLIVAN, P.J.—On June 3, 1974, Russell Rainier died intestate. Within the next few days, letters of administration were inadvertently issued both to Richard Snider, representing the decedent's children, and to Mary Lou Rainier (Mrs. Rainier) as surviving spouse. Each party filed a petition to set aside the letters issued the other and a hearing was held July 23, 1974, after which the trial court revoked Mrs. Rainier's appointment as Administratrix of the estate.

Therafter, Mrs. Rainier filed a petition seeking judicial declaration of her heirship. However, before disposition of this issue, Snider filed a petition to sell real estate owned by decedent. A hearing was held June 5, 1975, and over Mrs. Rainier's objection, the petition was granted and the property was sold at public auction. Mrs. Rainier filed an interlocutory appeal contesting the validity of the trial court's order for the sale of real estate.

Subsequently, the parties stipulated that the record of the hearing held July 23, 1974 (for purposes of determining the appropriate administrator of decedent's estate), should serve as the evidentiary basis for the ruling on Mrs. Rainier's claim of heirship. The trial court, on October 31, 1975, ruled that Mrs. Rainier was not the decedent's widow, and therefore, was not entitled to participate in the distribution of his estate. Mrs. Rainier filed her second appeal in these proceedings, asserting that the trial court's ruling is contrary to law.

Because of the identity of issues deemed determinative, and pursuant to Ind. Rules of Procedure, Appellate Rule 5(B), we

consolidated the separate appeals and by this decision dispose of both.

In 1967, Mrs. Rainier (then Mary Lou Miller) married Kermit McClure in Columbus, Ohio. They lived together for approximately three months and then separated. Mrs. Rainier testified that they separated because McClure was previously married but not divorced. She failed to initiate divorce proceedings because, in her opinion, her marriage to McClure was void. From the time of their separation to the date of the hearing, Mrs. Rainier had neither seen nor heard from McClure, although there was some evidence tending to show that he was still alive.

Mrs. Rainier further testified that these circumstances were explained to decedent prior to their marriage on September 3, 1971. About one month after the marriage ceremony, decedent, according to Mrs. Rainier, decided he "just didn't want to be married anymore". To that end, he prepared a written statement, which Mrs. Rainier characterizes as a "common-law divorce". Mrs. Rainier stated that after inserting the words emphasized below, she signed the document which reads:

> "I make this statement. I married Russell L. Rainier Sept. 3, 1971 using the name of Mary Lou Miller. I was not divorced from Kermit McClure *to my knowledge*. My real name being Mary Lou McClure. This makes the marriage to Russell Lynford Rainier null and void. We are not married. I can make no claims to that affect. [sic] We will just forget the whole thing. Russell L. Rainier will not prosicute [sic] me as a bigamist. [sic] I will divorce Kermit McClure before marring [sic] again."

Nevertheless, there was some evidence that they lived together for some limited period after the document was signed. They apparently separated in December, 1971. Neither party initiated divorce proceedings between the date of their separation and the date of decedent's death in 1974.

I.

Mrs. Rainier argues that despite an earlier marriage, her marriage to decedent, once established, created a presumption of validity which shifted the burden of proof to the estate to show

its invalidity. She contends that the estate failed to prove the invalidity of her marriage to decedent and, therefore, the trial court's ruling that she is not his widow is contrary to law.

Indiana was an early subscriber to the view that one of the strongest presumptions of law is that a marriage, once shown, is valid. *Teter v. Teter* (1885), 101 Ind. 129, 132. This presumption is strengthened by another presumption — that of the continuance of a marriage and the continuance of the lives of the parties thereto. *Wiseman v. Wiseman* (1883), 89 Ind. 479, 483. However, where there are "conflicting marriages" of the same spouse, the presumption of validity operates in favor of the second marriage. The law presumes that the prior marriage was terminated by death or divorce. *Ross v. Red Cab Co.* (1938), 105 Ind. App. 440, 14 N.E.2d 333, 334. The policies upon which this presumption rests are that the law presumes innocence, not criminality (bigamy); morality, not immorality; and marriage, not concubinage. Clark, *Law of Domestic Relations* (1968) § 2.7.

The Indiana Supreme Court has held that the latter presumption shifts the burden of proof. Thus, the party asserting the invalidity of the second marriage must prove that the prior marriage was *not* dissolved by death or divorce. *Wenning v. Teeple* (1895), 144 Ind. 189, 41 N.E. 600, 602. *See* also, *Inland Steel Co. v. Barcena* (1942), 110 Ind. App. 551, 39 N.E.2d 800; *Continental Roll & Steel Foundry Co. v. Slocum* (1942), 111 Ind. App. 438, 41 N.E.2d 635. It is not enough to show that one of the spouses has a husband or wife still living. The presumption of law that the former marriage has been legally dissolved must also be overcome. *Wenning, supra,* 41 N.E.2d at 601.

There exists a division of authority as to the strength and effect of the presumption arising in favor of a second marriage. Annot., 14 A.L.R.2d 7 (1950). More properly phrased, the difference of opinion relates to the quantum of proof required to rebut the presumption. Thus, the proof necessary to rebut "varies [among jurisdictions] from positive proof, that is, proof precluding any other result, to proof raising a reasonable

inference that the first marriage was not dissolved . . ." *Id.* at 11; *see* also, *McCormick on Evidence* § 345 (3d ed. 1972).

An early Indiana Supreme Court case seemingly places Indiana in step with those jurisdictions requiring a high degree of proof to rebut the presumption. In *Boulden v. McIntire* (1889), 119 Ind. 574, 21 N.E. 445, the successor in title to real estate conveyed by Boulden's surviving spouse brought an action to quiet title as against the mother, brothers, and sisters of Boulden. The heirs argued that Boulden and his wife were not legally married because she had a previous husband still living and, therefore, the surviving wife was without authority to convey good title. The Supreme Court affirmed a jury verdict in favor of the successor in title, holding that the law requires the party who asserts the invalidity of a marriage to prove it, though it may involve the proving of a negative (i.e., that the prior spouse was still alive and that no divorce had been obtained). Such proof had not been offered at trial. After examining authority from other jurisdictions, the court stated:

> "The presumption of the death of the former [spouse], in the case of second marriage, is only one of the many presumptions the law indulges in favor of the validity of the second marriage. As the authorities cited abundantly establish, every presumption will be indulged as against the illegality of such a marriage. If the law will presume the termination of the former marriage relation by the death of one of the parties to it, why not indulge any other presumption which might legally terminate that relation? We think, where the facts are not such as to destroy such a presumption, that a dissolution of the first marriage, by divorce, will be presumed in favor of the validity of the second marriage." 21 N.E. at 447.[1]

The presumption is not conclusive: it may be rebutted by competent evidence that at the time of the subsequent marriage the former spouse was still alive and had not obtained a divorce. *Compton v. Benham* (1908), 44 Ind. App. 51, 85 N.E. 365, 367. It is not necessary to prove the nonexistence of divorce in every conceivable jurisdiction. It is only

---

1. To the same effect is *Dunn v. Starke County Trust & Savings Bank* (1933) 98 Ind. App. 86, 184 N.E. 424.

necessary to rule out those proceedings in forums where the former spouse might reasonably be expected to pursue them. *See*, e.g., *Davis v. Davis* (Texas 1975) 521 S.W.2d 603, 605; *cf. Compton v. Benham, supra*, 85 N.E. at 367.[2]

In the case at bar, when the certificate of marriage between decedent and Mrs. Rainier was introduced into evidence, it was incumbent upon the estate to prove the invalidity of that marriage. No evidence was introduced to the effect that the estate had searched the appropriate records and failed to find a divorce from McClure; nor did the estate attempt to show that McClure was still alive. The sole argument at trial was that Mrs. Rainier was previously married and that *she* did not initiate divorce proceedings. From these facts, the estate urges that the trial court properly denied her claim of heirship. This argument simply misplaces the burden of proof.

The proof necessary to overcome the presumption is not to burdensome as to make the presumption irrebuttable. Yet in the case at bar, the estate apparently failed to make any effort to search the appropriate records for a divorce decree or to show that McClure was still alive. We are therefore compelled to hold that the estate failed to meet its burden of proof.

The presumption which we have indulged rests upon strong social policies which give effect to the expectations of the parties. Parties to a marriage are entitled to a security provided by the law. The legal premise permits them to assume validity so that they may plan and order their lives accordingly. The need to effectuate the policies underlying the presumption may be augmented with the continuance of the marriage over a long span or when the question of the legitimacy of offspring is addressed. That these reinforcing factors are not present in the instant case does not affect our duty to apply the law as found by our Supreme Court.

---

2. In *Compton*, there was additional evidence in the form of a divorce proceeding brought by the former spouse after the second marriage, thereby permitting an inference that the former spouse had not obtained a divorce prior to Benham's second marriage.

The estate argues that the presumption should not be indulged where the policies upon which it is based are not well-served.[3] Such an ad hoc "policy approach" might well wreak havoc with the stability of the case law and would provide little guidance to trial judges who must confront the issue in myriad factual contexts. It is no doubt true that blind adherence to principles of *stare decisis* may in certain case produce a seemingly inequitable result. Yet the presumption applied in the case at bar will, in most cases, operate to achieve a just and equitable conclusion of the cause. Thus, the estate's argument must yield to the preservation of the stability and confidence in an unquestionably equitable principle of law.

## II.

In view of our holding as to Mrs. Rainier's claim to heirship we must address her attack upon the order directing sale of decedent's real estate. Mrs. Rainier contends that the order is not supported by sufficient evidence that the sale was "necessary". The trial court found that the property should be sold for the purpose of making distribution of the estate and further, that the sale of the property was in the best interests of the estate.

I.C. 29-1-15-3 (Burns Code Ed. Supp. 1976) provides:

"Any real or personal property belonging to an estate may be sold, mortgaged, leased or exchanged under court order when necessary for any of the following purposes:

(a) For the payment of claims allowed against the estate;

(b) For the payment of any allowance made to the surviving spouse and dependent children under twenty-one [21] years of age of the decedent;

(c) For the payment of any legacy given by the will of the decedent;

(d) For the payment of expenses of administration;

---

3. The Supreme Court of Minnesota employed a policy-oriented approach in *In Re O'Rourke* (Minn 1976) 246 N.W.2d 461. Therein it was held that in evaluating "conflicting presumptions" a court should look to the underlying policies intended to be served by the presumption and the extent to which those policies are actually served under the facts of a particular case. For a comprehensive discussion of the varying approaches taken by other courts, *see* Annot., 14 A.L.R.2d 7 (1950).

(e) For the payment of any gift, estate, inheritance or transfer taxes assessed upon the transfer of the estate or due from the decedent or his estate;

(f) For making distribution of the estate or any part thereof;

(g) For any other purpose in the best interest of the estate."

There exists a dearth of authority in Indiana, and other jurisdictions with identical statutes, construing subdivisions (f) and (g). The few cases addressing these issues seemingly represent a divergence of opinion regarding the proper construction of the provisions.

There is authority for the position that the "best interests of the estate" do not include consideration of the interests of the heirs or other beneficiaries. Under this view, neither the fact that it is desirable to sell land because of inability to satisfactorily partition, nor the fact that the land might bring a higher price as a whole is held related to the administration of the estate. Therefore, in *McIntosh v. Conn. Gen. Life Ins. Co.* (Mo. 1963) 366 S.W.2d 409, the court held that neither reason could be in the "best interests of the estate."[4]

However, New York courts have construed their statute very broadly. The interests of heirs and other beneficiaries are relevant considerations, *In Re Perkin's Will* (1967), 55 Misc.2d 834, 286 N.Y.S.2d 586, 590, and the court has the authority to order a sale of realty when the interests of the parties are best served by such a sale. *In Re Taddeo's Estate* (1951), 107 N.Y.S.2d 448, 449. It has further been held that the purpose of subdivision (f) is to expedite distribution by providing an alternative to an expensive and time-consuming collateral partition proceeding. *Wade v. Bigham* (1941), 178 Misc. 305, 34 N.Y.S.2d 22, 24.

Confronted with a conflict of foreign authority interpreting

4. This result has been avoided by at least one legislature through amendment of subdivision (g) to include "the best interests of all parties interested in the estate". Wyo. Ann. Stat. § 2-261 (Michie 1957). The Wyoming courts hold that the statutory authority to sell estate land, as thus amended, is nothing more than an expedient to enable courts to obtain monies necessary to discharge an estate's obligations or to make more practicable the proper division and distribution of the estate assets. *See*, e.g., *In Re Potter's Estate* (Wyo. 1964) 396 P.2d 438.

identical statutes, we turn to the Commission Comments to I.C. 29-1-15-3 for guidance. Therein it is stated:

> "This section is adopted from the [Model Probate Code] Sec. 152. . . . In the absence of provisions in the will, a statute was necessary to authorize a sale in all cases where the decedent had not taken affirmative steps to make the land liable for his debts. Gradually these purposes have been broadened, many of the statutory purposes appearing in current statutes being that expressed in (g); viz., 'for any purpose beneficial to the estate.' Thus, if a small tract of land were to be divided among many heirs or devisees, some of whom were under disabilities, a serious problem of marketability would be present if it were distributed to them in kind. Under this section the land could be sold by the personal representative and the proceeds distributed, thus eliminating a difficult and otherwise expensive problem for the interested persons. This section was taken in part from N.Y. Surr. Ct. Acts, Sec. 234. * * *"

We believe that a construction of the statute similar to that made in New York is more in keeping with the intent of our General Assembly. Therefore, we hold that the interests of all potential beneficiaries of the estate, are *inter alia*, relevant considerations in determining whether estate realty should be sold.[5]

In the case at bar, the trial court's order that the property should be sold was based upon two considerations: (1) the market value of the real estate was at an apparent all-time high and thus a sale would bring added monies into the estate, and (2) the high probability of a later suit for partition which would result in considerable delay and expense. The trial court further noted that Snider had posted bond and would account for any portion of the proceeds to which Mrs. Rainier may become entitled. It was

---

5. Our conclusion is buttressed by 1 *Henry's Probate Law and Practice*, Ch. 19 § 2 (6th ed. 1954) wherein it is stated at p. 642:

"The statute [I.C. 29-1-15-3] now permits both realty and personalty to be sold, not merely to satisfy any charges of any nature against the estate, but in all other instances where the personal representative, with the approval of the court, deems *the best interests of the interested parties would be served* by so doing. Thus, concurrent interests of heirs may be partitioned by sale, or burdensome liens discharged. The question of what is to the 'best interests of the estate' gives great latitude to the court's discretion." (Emphasis supplied)

emphasized at the hearing that the issue of heirship had not been foreclosed. The trial court assured Mrs. Rainier that she would "get her day in court".

By its terms, I.C. 29-1-15-3 (Burns Code Ed. Supp. 1976) places the decision to sell estate realty within the sound discretion of the trial court.[6] Under the facts and circumstances of this case, we are unable to find an abuse of such discretion.[7]

By reason of the foregoing, we affirm the order which directed sale of decedent's real estate and we reverse the judgment upon Appellant's Petition to Determine Heirship. The cause is hereby remanded with instructions to enter judgment consistent with this opinion.

Buchanan and White, JJ. concur.

NOTE—Reported at 369 N.E.2d 666.

---

6. See footnote 4, *supra.*

7. 1 *Henry's Probate Law and Practice,* footnote 4, *supra,* at p. 644, seems to contemplate a sale of estate realty in circumstances analogous to those in the case at bar:

"The terms of [I.C. 29-1-15-3] are sufficiently broad to enable the court to dispose of the entire interest of the decedent in realty, including the widow's share, where it would bring a better price as a whole than as a disposition of a part, even though the disposition of the widow's portion was not necessary to pay debts."