**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Essie HARDIN and Linda Edwards, Defendants.**

**No. IP 98–0324–C H/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 14, 1998.

Bart A. Karwath, Barnes & Thornburg, Indianapolis, IN, for Plaintiff.

Robert Rock, Anderson, IN, for defendant Essie Hardin, and Steven C. Smith and Patrick R. Ragains, Smith Ragains & Cotton, Anderson, IN, for defendant Linda Edwards.

## ENTRY OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAMILTON, District Judge.

The central question in this case is which of two women should be treated as the legal widow of Robert Edwards, an employee of General Motors who died on April 4, 1997. The legal widow is entitled to benefits under an employee benefit plan. This interpleader action was brought by plaintiff Metropolitan Life Insurance Company ("MetLife"), which is the administrator of the Survivor Income Benefit Insurance ("SIBI") of the General Motors Life and Disability Program (the "Plan"), which is an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Robert Edwards was a participant in the Plan at the time of his death. After his death, defendants Linda Edwards and Essie Hardin both claimed to be his lawful widow entitled to SIBI benefits under the Plan. MetLife then filed this interpleader action to resolve the conflicting claims.

Under the Plan, SIBI benefits may be available to Robert Edwards' lawful widow at the time of his death, "but only if she was legally married to the [decedent] for at least one year immediately prior to his death." Essie Hardin married Robert Edwards in 1972. Both Ms. Hardin and Mr. Edwards considered their marriage terminated. Ms. Hardin remarried twice and Robert Edwards later married Linda Edwards. Nevertheless, Ms. Hardin claims she is the lawful widow

because, she now says, their marriage was never properly dissolved. Linda Edwards, on the other hand, claims that she is the lawful widow of the decedent based on her marriage to Robert Edwards in 1986. She was living with him in the years before his death and cared for him during his last illness.

This action was tried to the court on August 10, 1998. Ms. Hardin and Mrs. Edwards appeared by counsel and in person and presented their evidence. MetLife, as a disinterested stakeholder, was not required to be present or submit evidence at trial, or to argue the disputed issues, but MetLife has maintained its request for declaratory and injunctive relief to protect it from the conflicting claims, as set out in its complaint. This entry sets forth the court's findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a). Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such. As explained below, on the central issue, the court concludes that Linda Edwards is Robert Edwards' lawful widow.

### Findings of Fact

1. Robert Edwards was a participant in the Plan until his death on April 4, 1997.

2. Robert Edwards resided in Anderson, Indiana, at the time of his death. Defendant Linda Edwards has also resided in Anderson, Indiana, at all relevant times. Defendant Essie Hardin has lived in Indianapolis, Indiana, since approximately 1977.

3. On or about December 26, 1972, Robert Edwards and Essie Hardin (then known as Essie Johnson) applied for a marriage license, which was returned and thus made a marriage certificate in Madison County, Indiana, on or about December 31, 1972. A true and correct copy of the application for marriage license, including the return making it a marriage certificate, is attached to MetLife's Complaint as Exhibit 5.

4. In 1974, Robert Edwards filed in the Madison Superior Court a petition to divorce Essie Hardin, but that petition was later

dismissed. Robert Edwards and Essie Hardin lived together for about three more years and separated in approximately 1977. The parties have searched the court records of Madison County and have found no record of any other dissolution proceeding involving this marriage. The last time Ms. Hardin spoke with Robert Edwards was in 1980, when Ms. Hardin's mother died.

5. On December 12, 1986, Robert Edwards married Linda Evans, now known as Linda Edwards. Exhibit C is a true and correct copy of the marriage certificate for Robert Edwards and Linda Edwards. In the application for the marriage license, Robert Edwards swore under oath that his previous marriage had ended by divorce.

6. Essie Hardin has married twice since her marriage to Robert Edwards. On May 30, 1987, she married Bonnie Warren in Marion County, Indiana. In the application for the marriage license, Ms. Hardin also swore that her last marriage had ended by divorce, giving the date of the divorce as June 1981. See Ex. D. Before she married Mr. Warren, Ms. Hardin had consulted a lawyer who advised her that she was free to remarry. The record before this court does not reflect the factual or legal basis for that advice. Ms. Hardin's marriage to Mr. Warren ended in divorce in 1991. Ms. Hardin then married Lee Hardin on August 5, 1992. In the application for that marriage license, Ms. Hardin swore that she had two prior marriages and that the last marriage (presumably to Warren) had ended in divorce. See Ex. E.[1]

7. A true and correct copy of the group insurance certificate applicable to the Plan is attached to MetLife's Complaint as Exhibit 1. A true and correct copy of the supplemental agreement concerning the Plan is attached to MetLife's Complaint as Exhibit 3.

8. Under the Plan, a Transition SIBI benefit of either $500 or $275 per month is payable for a maximum of 24 months to the "widow of a deceased male employee, but only if she was legally married to the deceased employee for at least one year imme-

diately prior to his death." MetLife's Complaint, Exhibit 3 at 32–34.

9. Under the Plan, a Bridge SIBI benefit is payable to the widow of a deceased male employee, but only if she was legally married to the deceased employee for at least one year prior to his death and "is 45 years of age or more on the date of the employee's death, or whose age, when combined with the employee's Years of Participation .... totals 55 or more, and who has received 24 monthly payments of Transition Survivor Income Benefits...." MetLife's Complaint, Exhibit 3 at 36. The amount of the Bridge SIBI benefit depends in part, on whether the eligible recipient of the benefit receives monthly benefits under any other pension plan or retirement program to which General Motors or any of its subsidiaries has contributed. MetLife's Complaint, Exhibit 3 at 36.

10. On or about May 15, 1997, Linda Edwards submitted to MetLife a claim for SIBI benefits under the Plan, claiming to be the lawful widow of Robert Edwards.

11. MetLife believed in good faith that Linda Edwards was the lawful widow and therefore made two monthly payments of Transition SIBI benefits to her, totaling $550 (i.e., 2 × $275). After MetLife made these two payments to Linda Edwards, Essie Hardin informed MetLife that she, not Linda Edwards, is the lawful widow, and Ms. Hardin claimed that she is entitled to SIBI benefits under the Plan.

12. Facing these conflicting claims to the SIBI benefits under the Plan, MetLife suspended payments of Transition SIBI benefits to Linda Edwards and began an investigation to determine who is the lawful widow.

13. MetLife admits that it owes a minimum of $275 per month for a total of 24 months in Transition SIBI to one of the two interpleader defendants. Whether and to what extent MetLife is obligated to pay the lawful widow of the decedent Bridge SIBI benefits can be determined only upon the conclusion of a 24 month period of Transition

---

1. The evidence indicates that Ms. Hardin actually had three prior marriages at that point, for in the application for the marriage license to marry Robert Edwards, Ms. Hardin swore that she had already been married once before and that the marriage had ended in divorce. See Ex. A. Based on that information, it appears that Robert Edwards was her second husband, Bonnie Warren her third, and Lee Hardin her fourth.

SIBI benefits. Factors such as the age of the lawful widow and whether the lawful widow receives payments from other sources will affect whether and to what extent Bridge SIBI benefits are to be paid.

14. In this matter, MetLife is a disinterested stakeholder.

15. On January 21, 1998, Essie Hardin petitioned for, and the Madison Circuit Court issued, an order that purports to order MetLife "to pay all monies and benefits owing to the heirs at law or beneficiaries of any policies, plans, or testamentary documents to the Estate of Robert Edwards to be held until further order of the Court and pending the petition of heirship currently pending before the Court." See Complaint, Ex. 7. There is no evidence, however, that Ms. Hardin ever made service of process on MetLife or Linda Edwards, or that the Madison Circuit Court otherwise obtained personal jurisdiction over MetLife or Linda Edwards.

### Conclusions of Law

1. This is a civil action of interpleader or in the nature of interpleader brought pursuant to Fed.R.Civ.P. 22, 28 U.S.C. § 1331, and 29 U.S.C. § 1132(e)(1). There is an actual controversy among the parties within the jurisdiction of this court. MetLife, as interpleader plaintiff, seeks declaratory and injunctive relief under Fed.R.Civ.P. 57 and 28 U.S.C. §§ 2201–2202. Venue is proper in this court.

2. Under ERISA, MetLife is required to discharge its duties as plan administrator "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

3. In the absence of a judicial determination as to which defendant is the lawful widow of Robert Edwards entitled under the Plan to SIBI benefits, actual and adverse conflicting claims to such benefits exist. In the absence of a judicial resolution of the conflicting claims in this matter, MetLife and the Plan are or may be exposed to double liability. This court must determine which interpleader defendant is the lawful widow of Robert Edwards before MetLife can safely pay Transition SIBI benefits, as well as any Bridge SIBI benefits that may be owed or will accrue.

4. Indiana law governs which of the defendants is the lawful widow. Under Indiana law, where there are so-called "conflicting marriages," the law presumes that the second marriage is valid and that the prior marriage was terminated by death or divorce. *Rainier v. Snider,* 174 Ind.App. 615, 369 N.E.2d 666, 668 (Ind.App.1977), citing *Ross v. Red Cab Co.,* 105 Ind.App. 440, 14 N.E.2d 333, 334 (Ind.App.1938). This presumption is well established. See *Wenning v. Teeple,* 144 Ind. 189, 41 N.E. 600, 601–02 (Ind.1895) (presumption is "settled law"); *Boulden v. McIntire,* 119 Ind. 574, 21 N.E. 445, 448 (Ind.1889); *Dunn v. Starke County Trust & Savings Bank,* 98 Ind.App. 86, 184 N.E. 424, 425 (Ind.App.1933). This presumption is based upon a public policy of presuming innocence rather than criminality (in the form of bigamy), morality rather than immorality, and marriage rather than concubinage. *Rainier v. Snider,* 369 N.E.2d at 668. There is also a practical side to the presumption: "The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved, either by death of their former consort or by decree of court, in order to protect themselves against a bill for divorce or a prosecution for bigamy." *Boulden v. McIntire,* 21 N.E. at 447, quoting with approval *Harris v. Harris,* 8 Ill.App. 57. The presumption in favor of the second marriage is strong, but it is not irrebuttable. *Rainier v. Snider,* 369 N.E.2d at 669. To rebut the presumption, a party claiming that a second marriage is invalid must prove that the prior marriage was not dissolved by death or divorce. *Id.* at 668. The fact that one spouse did not file for divorce is not sufficient. Proof of the negative could almost never be conclusive, but sufficient proof would appear to require at a minimum proof that no divorce had been granted in forums where one might reasonably expect a divorce to have been pursued. *Id.* at 669. In any event, however, in light of the values at stake, proof rebutting the presumption must be "strong, satisfactory, and conclusive." See *Franklin v. Lee,* 30 Ind. App. 31, 62 N.E. 78, 83 (Ind.App.1901).

5. In this case the parties have searched the records in Madison County,

Indiana, and they have found no evidence that Robert Edwards and Essie Hardin were ever divorced. But the evidence also shows that both Robert Edwards and Essie Hardin remarried, and both swore that their marriage had been ended by divorce. Under these circumstances, the court concludes for two distinct but related reasons that Linda Edwards is Robert Edwards' lawful widow.

6. First, the court simply is not satisfied that Essie Hardin has rebutted the strong presumption that her marriage to Robert Edwards ended by divorce. Neither the court nor the parties can explain definitively the absence of a divorce decree, and there are many possible explanations. Because of the later conduct of both Robert Edwards and Essie Hardin, the absence of a divorce decree does not satisfy the court that there was no divorce in this case. The fact that both remarried and swore their marriage had ended in divorce is persuasive evidence that tends to support the strong presumption that they in fact had been divorced. In addition, Ms. Hardin consulted a lawyer who told her she was free to remarry. This court has not been shown the factual or legal basis for that advice, but that advice was consistent with the behavior of both Robert Edwards and Essie Hardin. The court finds it more likely that the advice was well-founded than that it was groundless. See generally *Franklin v. Lee*, 62 N.E. at 82 (rejecting argument that a marriage that had been formally celebrated was void because no license could be found: "To hold to the contrary would make it possible to disrupt homes, destroy the happiness of families, cast odium upon children born in lawful wedlock, and disturb society. Marriage and its sanctity do not rest upon any such uncertain foundation.") Cf. *Crosby v. Crosby*, 769 F.Supp. 197, 199 (D.Md.1991) (applying Maryland law case similar to this one but ruling in favor of first wife where parties agreed that first marriage was never legally terminated and where first wife had not remarried, although she had lived with another man and had three children by him), *aff'd*, 986 F.2d 79, 81–82 (4th Cir.1993).

7. Second, because Essie Hardin herself later remarried and, in order to obtain a marriage license for that marriage, swore that her marriage to Robert Edwards had· ended in divorce, the court finds that Essie Hardin should be and is estopped from denying that her marriage to Robert Edwards ended in divorce. Although the reported decisions of Indiana courts have dealt with "conflicting marriages" from time to time, the parties have not directed the court's attention to any case in which a spouse who had later remarried was able to persuade the courts that the earlier marriage remained intact. Even assuming that Robert Edwards and Essie Hardin never took the trouble to obtain a divorce, 'they both acted as if they had been divorced. There are no innocent third parties here who were relying on the continuing validity of that marriage. To the contrary, her later husbands and his later wife all were relying on the apparent divorce here. Thus, in an equitable sense, this case is akin to a recent Seventh Circuit decision invoking "the penumbra of the doctrine of judicial estoppel." See *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir.1998). In *Ladd* the administrator of an ERISA plan. (MetLife, by coincidence) denied a claim for total disability benefits. The administratory did so after having helped the same claimant win Social Security benefits based upon her total disability, and after the claimant's condition had deteriorated further. The doctrine of judicial estoppel did not apply strictly in *Ladd*, but the purpose of the doctrine is "to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant." *Ladd*, 148 F.3d at 754, citing *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir.1998). In *Ladd* the Seventh Circuit found that the "spirit" of the doctrine applied to MetLife when it changed positions for its benefit. Similarly here, the doctrine of judicial estoppel does not apply strictly, but this case surely falls within the same general equitable foundation for the doctrine—that it is not equitable for a person to obtain certain benefits (such as a marriage license) based upon her solemn and sworn representation that X is true (a prior marriage ended in divorce), and then to turn around and obtain additional benefits by swearing that X is not true (there was no divorce). Stated in such a broad form, exceptions can be found in the law, but there is no reason why that general principle should not apply here. There is no

indication that Ms. Hardin knows any fact today about her marriage to Robert Edwards that she did not know when she married Bonnie Warren. It would be contrary to public policy, and inequitable to determine that Essie Hardin, who had not lived with Robert Edwards for 20 years, who had not spoken with him for 17 years, and who had twice remarried, should be treated as Robert Edwards' lawful widow.

8. Courts have often invoked the principle that "equity will, for the purposes of justice, treat that to have been done, which ought to have been done." *Taylor v. Longworth,* 39 U.S. 172, 177, 14 Pet. 172, 10 L.Ed. 405 (1840) (Story, J.); accord, *Littlefield v. Perry,* 21 Wall. 205, 88 U.S. 205, 226–27, 22 L.Ed. 577 (1874); *In re Webb,* 160 F.Supp. 544, 547 (S.D.Ind.1958); *Cook v. Miller,* 47 Ind.App. 453, 94 N.E. 783, 784 (Ind.App. 1911); *Sourwine v. Supreme Lodge Knights of Pythias of the World,* 12 Ind.App. 447, 40 N.E. 646, 647 (Ind.App.1895); see also *United States ex rel. Schuster v. Vincent,* 524 F.2d 153, 160 (2d Cir.1975) ("Equity regards as done what ought to have been done, ... and resolves uncertainties against those whose wrongful acts or omissions created them...."); *United States v. American Cyanamid Co.,* 598 F.Supp. 1516, 1525 (S.D.N.Y.1984) ("equity deems done that which should have been done"). That equitable principle applies here, for there are no innocent third parties who have believed that Robert Edwards and Essie Hardin remained married and who have relied upon the continuing validity of that marriage. See generally *Casey v. Cavaroc,* 96 U.S. 467, 491, 24 L.Ed. 779 (1877) (although "equity will consider as done what the parties intended should be done," equity will not exercise this power so as to injure third persons who have relied upon actions actually taken, and not merely intended or agreed). Although no children were born of the marriage between Robert Edwards and Linda Edwards, the facts could easily be different in other similar cases.[2] As a matter of equity, the court concludes that it should presume that the marriage between Robert Edwards and Essie Hardin ended in divorce, as both Robert Edwards and Essie Hardin claimed when they obtained later marriage licenses, and before there was any prospect that money might be available if one or the other denied having been divorced and claimed to have been a bigamist.[3]

9. Accordingly, the court determines that, under Indiana law, defendant Linda Edwards is the lawful widow of Robert Edwards and is

**2.** Indiana law has long protected the legal legitimacy of children born of void marriages if at least one spouse reasonably believed the marriage not to have been bigamous. See Ind.Code § 31–13–1–2 (1997), recodifying Ind.Code § 31–7–8–2 (1987), which in turn recodified Ind.Code § 31–1–7–3 (1982). As currently worded, this statute applies where "either of the parties to the marriage did not reasonably believe that either of the parties had a living husband or wife." The court assumes that this somewhat awkward rephrasing in the current version means that the statute applies so long as one spouse reasonably believed the marriage not to have been bigamous, as was clear from the earlier version of the statute. In any event, though, a determination that an apparently valid marriage was not valid can reasonably be expected to have significant psychological and emotional consequences for other family members who believed the marriage to have been valid.

**3.** The public policy of Indiana is also reflected in statutes dealing with intestate succession. Under those statutes a surviving spouse is entitled to a substantial share of the deceased spouse's estate (the precise portion depends on whether there are other heirs). See Ind.Code § 29–1–2–1. But the laws on intestate succession also provide that if the surviving spouse has abandoned the deceased spouse "without just cause," or if the surviving spouse "shall have left the other and shall be living at the time of his or her death in adultery," then the surviving spouse shall take no part of the estate. Ind.Code §§ 29–1–2–14, –15. If the court were to conclude that Essie Hardin's marriage to Robert Edwards remained valid until his death in 1997, then it would also follow that Ms. Hardin had abandoned him and that she was, at the time of his death, living in an adulterous relationship, so that under Indiana law she would not be entitled to any portion of his estate. When this issue was raised at trial, Ms. Hardin argued that these statutes should not apply to her because she thought her marriage to Robert Edwards had ended, and so she did not *intend* to abandon him or to be involved in an adulterous relationship. Thus, Ms. Hardin is asking the court, in deciding whether she is the lawful widow, to disregard both the human reality and her intentions, and to take a "technical" approach to that issue. But in considering these unpalatable consequences of her position, she asks the court to disregard such "technicalities" and to let her subjective intentions govern. Enough said.

the proper recipient of any SIBI benefits payable to his lawful widow under the Plan.

10. Regardless of whether Linda Edwards or Essie Hardin is the lawful widow, MetLife is in either case entitled to a credit for the $550 in .Transition SIBI benefits it has already paid Linda Edwards under Met-Life's good faith belief that Linda Edwards was the proper recipient of such benefits. See *Crosby v. Crosby*, 986 F.2d 79, 83–84 (4th Cir.1993).

11. The record before this court shows that the order of the Madison Circuit Court dated January 21, 1998 (attached to Met-Life's Complaint as Exhibit 7) which purports to direct MetLife to make payment of "all monies and benefits owing to the heirs at law or beneficiaries of any policies, plans, or testamentary documents to the Estate of Robert Edwards," was issued without jurisdiction over the person of MetLife or Linda Edwards. That *ex parte* order therefore is no obstacle to this court's resolution of this case to determine the identity of the lawful widow of Robert Edwards.

12. The court will also permanently enjoin both Essie Hardin and Linda Edwards from ' taking any action or commencing or prosecuting any proceeding against MetLife, General Motors, the Plan, or against one another, seeking a determination of, or relating to whether Linda Edwards or Essie Hardin is the lawful widow of the decedent for purposes of benefits under the Plan.

13. In an action under ERISA, the court has the discretion to award attorney's fees to a prevailing party. See 29 U.S.C. § 1132(g)(1). Linda Edwards is the prevailing party. In deciding whether to award fees in an ERISA case, the court should consider five factors: (1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy personally an award of attorneys' fees; (3) whether a fee award would deter others from taking similar actions under similar circumstances; (4) the benefit the lawsuit may have conferred on other plan beneficiaries; and (5) the relative merits of the parties' positions. See *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697–98 (7th Cir.1991); *Janowski v. International Bhd. of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931, 940 (7th Cir.1982), *vacated on other grounds*, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). Essie Hardin's position in this case is completely without merit, and if Linda Edwards is required to pay her own attorney's fees, it would reduce her share of the quite modest benefits in dispute. An award of fees against Ms. Hardin will not reduce the benefits available to other plan beneficiaries, and an award should serve the deterrent effect of discouraging other similarly meritless efforts to invade the benefits properly available to the family of a deceased employee. The court is not finding that Ms. Hardin has acted with subjective bad faith, but, as reflected in Conclusions of Law 5 – 8 and note 3, above, she has asserted a meritless and inequitable claim that predictably and necessarily resulted in this lawsuit. The court has before it no evidence concerning Ms. Hardin's financial situation other than the fact that she is a long-time employee of General Motors. With the cooperation of all counsel, however, the court has handled this case in an expedited fashion intended to avoid unnecessary motions practice and discovery by conducting a prompt, short bench trial. That approach should have kept attorneys' fees to a modest level. In light of all these circumstances, the court will exercise its discretion to order Ms. Hardin to pay a reasonable attorney's fee and costs to Mrs. Edwards upon a timely petition under Fed. R.Civ.P. 54(d)(2). Ms. Hardin may file an objection to such petition no later than 14 days after it is filed.

Final judgment will be entered accordingly.